IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SKYPORT GLOBAL | § | CASE NO. 08-36737-H4-11 |
| COMMUNICATIONS, INC., | § | |
| | § | |
| DEBTOR | § | Chapter 11 |

### FINAL ORDER APPROVING SECURED DEBTOR IN POSSESSION POST-PETITION FINANCING

Came on to be considered the Debtor's Motion for Final Approval of Secured Debtor in Possession Post-Petition Financing (the "Motion"). The Court set a final hearing on this Motion for November ___, 2008, at which counsel for the parties appeared and presented evidence and oral argument. After careful consideration of all matters before it, the Court is of the opinion that the estate would incur irreparable injury if the Motion is not granted; **IT IS HEREBY FOUND THAT:**

A. On October 24, 2008 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*.

B. The Debtor has continued as debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108. No trustee or examiner has been appointed in these cases, and no official creditors committee has been formed as of the date hereof.

C. This Court has jurisdiction, pursuant to 28 U.S.C. sections 157(b) and 1334, over these proceedings, and over the persons and property affected hereby.

### Debtor's Financing Needs

D. An immediate and ongoing need exists for the Debtor to obtain funds with which to administer and preserve the value of its estate. The ability of the Debtor to finance his ongoing operations requires the additional availability of working capital, the absence of which

would immediately and irreparably harm the Debtor, its estate, and its creditors and the possibility for a successful reorganization.

E.The Debtor is unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense, or to obtain secured credit, allowable only under Bankruptcy Code sections 364(c)(2), 364(c)(3), and 364(d), except under the terms and conditions provided in this Order.

F.The Debtor is unable to obtain credit for borrowed money without granting liens on various of the assets of the Debtor pursuant to Bankruptcy Code sections 364(c)(2), 364(c)(3) and 364(d), as provided by this Order.

G.The relief requested in the Motion is necessary, essential, and appropriate for the continued operation of the Debtor's management and preservation of his properties.

H.Certain shareholders of Balaton Group, L.P.[1] (the "Lenders") have agreed to make an $800,000.00 debtor-in-possession financing loan to the Debtor (the " DIP Loan"), secured by the Collateral defined in this Order and subject to the following conditions:

(a)interest rate shall be at the prime rate of interest published in *The Wall Street Journal* plus 4 percent;

(b)payment on the DIP Loan shall be due in full on the earliest to occur of (i) plan confirmation, (ii) May 1, 2009, or (iii) on the occurrence of an Event of Default defined in this Order.

I.It is in the best interest of the Debtor's estate to be allowed to enter into the DIP Loan with the Lenders.

J.The terms and conditions of the DIP Loan are fair and reasonable and are believed by the Debtor to be the best available under the circumstances.

---

[1] Balaton is the Debtor's majority shareholder.

K.      The terms of this Order were negotiated in good faith.  The loan advances to be made under the DIP Loan will be so extended in good faith, in consequence of which the Lenders are entitled to the protection and benefits of Bankruptcy Code section 364(e).

L.      Debtor's counsel has certified that a copy of the Motion (together with copies of the proposed DIP Loan Agreement annexed thereto) and notice of the final hearing on the Motion have been served either by electronic mail, telecopy transmission, hand delivery, overnight courier or first class United States mail upon the United States Trustee, the Lenders, all creditors known to have any liens against the Debtor's assets, and the twenty largest unsecured creditors.  The notice of the hearing at which this Order was entered constitutes adequate notice under the circumstances in accordance with Bankruptcy Rule 4001(c), BLR 4001(b) and (c) and Bankruptcy Code section 102(l), as required by Bankruptcy Code sections 364(c) and 364(d).

M.      Good cause has been shown for the entry of this Order and authorization for Debtor to obtain loans and other credit from the Lenders pursuant to the DIP Loan Agreement.  Debtor's need for financing of the type afforded by the DIP Loan Agreement is immediate and critical.  Entry of this Order will enable the Debtor to preserve the assets of its estate, will increase the possibility of a successful reorganization of Debtor and is in the best interests of Debtor, its creditors and its estate.  The terms of the financing authorized hereby appear fair and reasonable, reflect Debtor's exercise of prudent business judgment and are supported by reasonably equivalent value and fair consideration.

NOW THEREFORE, on the Motion of the Debtor and the record before the Court with respect to the Motion made by the Debtor, and good cause appearing, it is hereby **ORDERED**:

**Approval of the DIP Loan Agreement and
Authorization as to Borrowing and Granting of Liens,
Security Interests, and Administrative Priority Claim**

1. Subject to the other terms and conditions of this Order, the terms and the conditions of the DIP Loan Agreement are hereby approved, as follows:

    (a) the total amount of the DIP Loan to be provided by the Lenders pursuant to the terms and conditions of this Order shall be up to $800,000.00;

    (b) the proceeds of the DIP Loan shall be used by the Debtor solely for the purposes described in the Debtor's operating budget attached hereto as **Exhibit A** (the "Budget") subject to the variances described in this Order. The Debtor and the Lenders reserve the right to amend the budget, which amended budget shall be filed with the Court;

    (c) the Debtor is authorized to satisfy the conditions to the financing set forth above, and is directed to perform all obligations hereunder in accordance with the terms hereof and the provisions of the DIP Loan Agreement;

    (d) interest due on the Obligations (defined herein) shall be paid at the prime rate published in *The Wall Street Journal* plus four percent;

    (e) the maturity date of the DIP Loan shall be the earliest of (i) plan confirmation, (ii) May 1, 2009; or (iii) on the occurrence of an Event of Default defined in this Order (the "Maturity Date");

2. The Debtor is hereby authorized and directed to do and perform all acts and to make, execute, and deliver all instruments and documents which the Lender may request to evidence the Debtor's obligations and the Liens (defined herein) as provided herein (the "DIP Loan Documents") and the perfection of such Liens.

3. As security for the Debtor's obligations arising under this Order (collectively, the "Obligations"), and subject to the Professional Fee Carve Out as hereinafter defined, the Lenders shall have and are hereby granted (effective as of the Petition Date) security interests and liens (collectively, the "Liens" or "Lien") in the following properties of the Debtor with the following priorities:

(a) pursuant to Bankruptcy Code section 364(c)(2) first-priority, perfected, valid, and enforceable Liens upon all personal property of Debtor, including, without limitation, all of Debtor's accounts, inventory, equipment,[2] general intangibles (including all claims and counter-claims in any present and future litigation involving the Debtor), intellectual property (including, but not limited to, the patents and patent applications held by the Debtor), investment property, documents, instruments, chattel paper, deposit accounts, books and records of Debtor and all cash and non-cash proceeds of the foregoing items (other than causes of action arising under chapter 5 of the Bankruptcy Code) (the "Collateral");

4. Subject to the Professional Fee Carve Out as defined hereafter, the obligations created under this Order shall also be an allowed administrative expense claim (the "Senior Super-Priority Claim") with priority under Bankruptcy Code section 364(c)(1) and otherwise over all administrative expense claims and unsecured claims against the Debtor, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 326, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), and 1114.

5. Subject to the Professional Fee Carve Out, as defined hereafter, no costs or expenses of administration incurred in the Chapter 11 case are, or will be, prior to or on a parity

---

[2] This lien shall not extend to equipment which is already encumbered by a first lien in favor of another lender.

with the Obligations arising under the DIP Loan Agreement, or with any other claims of the Lenders arising hereunder.

6. All Obligations shall be due and payable upon the Maturity Date. Unless and until the Obligations are paid in full, the protections afforded to the Lenders under this Order, and any actions taken pursuant thereto, shall survive the entry of any order confirming a plan of reorganization or converting the Debtor's case into a case pursuant to Chapter 7 of the Bankruptcy Code, and the Liens provided herein shall continue to be valid and enforceable in this case and in any such successor case, and such Liens shall maintain their priority as provided by this Order until the Obligations have been satisfied in full.

7. The time and manner of payment of the Obligations pursuant to the terms of this Order, the Liens in and to the Collateral and the Super-Priority Claim shall not be altered or impaired by any plan of reorganization which may hereafter be confirmed, or by any other order which may hereafter be entered.

### Events of Default

8. The following shall constitute an event of default under this Order and the DIP Loan Agreement provided herein (hereinafter "Event of Default"):

 (a) Debtor shall fail to comply with any of the terms and conditions of this Order in any material respect;

 (b) a trustee shall be appointed in this Chapter 11 case;

 (c) an examiner shall be appointed in the Chapter 11 case with enlarged powers (powers beyond those set forth in Sections 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code;

 (d) the Chapter 11 case shall be dismissed or converted to a case under Chapter 7;

### Remedies upon a Post-Petition Event of Default

9. Any automatic stay otherwise applicable to the Lenders shall remain in effect, subject to the right of the Lenders to seek expedited relief from the automatic stay upon the occurrence of an Event of Default and at any time thereafter, and without further order of the Court, the Lenders may declare the principal of and accrued interest, fees and other liabilities constituting the Obligations to be due and payable.

10. After an Event of Default, the Debtor shall have no right to use the proceeds advanced under the DIP Loan Agreement other than towards the satisfaction of the Obligations. Subject to the Professional Fee Carve Out as hereinafter defined, in no event shall the Debtor be authorized to use any proceeds of the DIP Loan to pay any cost or expenses of administration in this Chapter 11 case or in any superseding Chapter 7 case after the occurrence of an Event of Default and the notice period provided in this Order until such time as all of the Obligations are paid and satisfied in full.

### Miscellaneous Provisions

11. Consistent with 11 U.S.C. § 364(e), if any or all of the provisions of this Order are hereafter modified, vacated or stayed:

(a) such stay, modification or vacation shall not affect the validity of any obligation incurred pursuant to this Order where such obligation was incurred prior to the effective date of such stay, modification or vacation, nor shall such stay, modification or vacation affect the validity, enforceability or priority of any Lien securing such obligation;

(b) any obligation incurred by Debtor to the Lenders under this Order prior to the effective date of such stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and the Lenders shall be entitled to all the rights,

remedies, privileges and benefits, including the Liens and priorities granted herein with respect to any such obligation; and

   (c) the indebtedness resulting from the DIP Loan made prior to the effective date of any stay, modification or vacation of this Order cannot (i) be subordinated, (ii) lose its priority lien or super-priority administrative expense claim status, or (iii) be deprived of the benefit of the status of the liens, security interests and claims granted to Agent under this Order as a result of any subsequent order in the Chapter 11 case, or any superseding case, of Debtor.

  12. All the payments made to the Lenders, and the Liens and the Senior Super-Priority Claim granted to the Lenders under this Order, and the priority thereto shall be binding on the Debtor, any successor trustee for the Debtor's estate, and all creditors of the Debtor, as provided in Bankruptcy Code section 364(e).

  13. The Lenders and the Debtor may modify the Budget or amend or waive any provision of this Order or the DIP Loan Agreement, *provided* that such waiver or modification or shall not be effective unless set forth in writing, signed by the parties hereto and approved by the Court.

  14. As used in this Final Order, "Carve-Out" means, at any time of determination, the sum of (a) allowed administrative expenses payable pursuant to 28 U.S.C. §1930(a)(6), (b) Unpaid Priority Professional Expenses (as defined below) incurred by Weycer, Kaplan, Pulaski & Zuber, P.C. ("WKPZ"), which sum shall not exceed $100,000. "Unpaid Priority Professional Expenses" means allowable fees, costs and reasonable expenses of WKPZ in the Chapter 11 Case pursuant to sections 327, 328 and/or 1103 of the Bankruptcy Code which have not been paid pursuant to interim fee application orders, from draw down of retainers, from draw downs

of the DIP Loan for attorney fees as set forth in the budget, or any fee procedure order that may be entered in this case.  Unpaid Priority Professional Expenses subject to the Carve Out will have priority over the Obligations.  Any Unpaid Priority Professional Expenses in excess of the Carve Out shall be paid after the Obligations have been satisfied; it is further

ORDERED that at the option of the Lenders as defined in the Motion, the Debtor's obligation to fund draws shall terminate, upon occurrence of any of the following events ("Events of Default"):

1. The appointment of an interim trustee or trustee in the Bankruptcy case or the appointment of an examiner to perform any of the duties of a trustee or debtor other than those set forth in § 1106(a)(3) or (4) or (7) of the Bankruptcy Code;

2. The dismissal of the bankruptcy case or the conversion of the bankruptcy case from one under Chapter 11 to one under Chapter 7; or

3. Any breach of or default by Debtor of any other term, condition, or covenant set forth by the Lenders.

SIGNED         _____

_____
UNITED STATES BANKRUPTCY JUDGE