IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SKYPORT GLOBAL | § | CASE NO.  08-36737-H4-11 |
| COMMUNICATIONS, INC., | § | |
| | § | |
| | § | |
| DEBTOR | § | Chapter 11 |

**RESPONSE TO ADVANCED PROJECTS INTERNATIONAL, INC.'S MOTION TO REQUIRE DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACT AND/OR TO PROVIDE ADEQUATE PROTECTION (Docket #138) AND APPLICATION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSES (Docket #142)**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

SKYPORT GLOBAL COMMUNICATIONS, INC. ("Debtor" or "SkyPort"), Debtor in this Chapter 11 case, hereby responds to Advanced Projects International, Inc.'s ("API") Motion to Require Debtor to Assume or Reject Executory Contract and/or to Provide Adequate Protection (docket #138) and objects to Application for Allowance and Payment of Administrative Expenses (Docket #142).  The grounds for this motion are as follows:

## SUMMARY

1. Before the bankruptcy, in an effort to cut costs, the Debtor began cutting back support staff and contracted with API to provide technical support service.  API failed to live up to that contract because it was unable to actually provide 24/7 tech support.  After the bankruptcy, the Debtor signed a replacement contract with API, who reassured the Debtor that it would provide first-rate technical support.  Instead, API remained incompetent and under-manned.  Urgent calls went unanswered.  Customers complained.  At one time, API crashed a

large part of the Debtor's network, disconnecting hundreds of remote sites. To re-connect those sites, the Debtor had to pay for non-API technicians to visit each remote site. API has filed two motions to collect on the same contracts that it egregiously breached – seeking payment of money it never earned. The Debtor rejects the pre-petition contract and disputes that API is entitled to be paid on the second.

## FACTUAL BACKGROUND

2. The Debtor is a satellite company providing telephony and broadband internet. To establish service, an end-user must have a satellite antenna and it must be precisely aimed at the satellite. To aim at the satellite, one must "cross-poll" the terrestrial antenna location with the assistance of the technical support personnel. Also, if satellite service needs to change configurations, those frequencies can be transmitted to the remote receiver from the satellite.

3. API holds itself out as a competent provider of technical support. A former employee of API had been hired by the Debtor prepetition. That person recommended API to the Debtor as a replacement for the Debtor's in-house technical support. API was incompetent and did not perform under the contract.

4. To induce the Debtor to hire API, API held itself out as ready to commence technical support operations immediately and warranted that it had a capable network operations center. Unknown to the Debtor, API lacked sufficient personnel and a VPN Tunnel and several other technical prerequisites required to provide competent service. The Debtor signed its first contract with API pre-petition. That is the contract that API asks the Debtor to assume or reject in Docket #138. The Debtor will reject that contract as the first half of a dreadful misadventure with an incompetent service company.

5.      While the former API employee still worked for the Debtor, the Debtor signed a *replacement* contract with API post-petition.  API had offered numerous concessions to the Debtor to make up for the poor quality of service and dissatisfied customers.  API still could not keep its commitments.

6.      The replacement API contract is the contract for which API seeks payment under Docket #142.  Like the first contract, API continued to provide a string of excuses and the Debtor heard complaints from a string of dissatisfied customers.  The Debtor resolved to maintain (or re-hire) technical support personnel.  Meanwhile, the Debtor paid API $100,000 for the privilege of incompetent service that injured Skyport's relationship with customers.

7.      The customer complaints about the lack of competent support culminated in an unqualified customer-relations disaster when, on December 10, 2008, many of Skyport's customers were shut down by API's gross incompetence.  Over 200 remote sites were shut down and needed to be manually reconfigured at the remote site.  The person API had configuring the "iDirect" network hub had no prior iDirect experience.  API's employee sent configuration instructions via the hub to remote sites that caused each site to look access on a different frequency – one that was not available to Skyport.

8.      By e-mail on January 19, 2009, Skyport declared API in material breach of its contracts. The Debtor promptly confirmed its position by letter of February 17, 2009.  The letter is attached as Exhibit "A".

9.      The Debtor has substantial claims against API for breach of contract.  The Debtor intends to pursue that litigation after confirmation and its anticipated plan of reorganization will expressly preserve claims against API.

## **LEGAL STANDARD**

10. An administrative claimant who seeks to enforce a post-petiton contract must enforce the contract according to normal contract principles. Under normal contract principles, material breach by one party excuses performance by the counterparty.

11. To the extent API seeks to collect an administrative claim without an enforceable contract, it must first satisfy the requirements of 11 U.S.C. §503 and §507 – by demonstrating the value of the benefit actually conferred.

## **CONCLUSION**

12. API has no administrative expense claim. The prepetition contract was first breached by API pre-petition. The pre-petition contract was never performed post-petition. Instead, API proposed a replacement contract, on which API was paid and which it breached post-petition. API has been paid more than it is owed on both the pre-petition and post-petition contracts. API has no equitable basis to be paid for post-petition work that did not benefit the estate. To the contrary, the Debtor is entitled to damages from API, which will be sought in another proceeding.

WHEREFORE, PREMISES CONSIDERED, the Debtor requests that the Court deny Docket #138 as moot (the Debtor will reject the contract) and deny Docket #142, and grant such other and further relief to which it may show itself justly entitled.

DATED:  March 30, 2009

>Respectfully submitted,
>
>WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
>
>By:  */s/ Edward L. Rothberg*
>      EDWARD L. ROTHBERG
>      State Bar No. 17313990
>      HUGH M. RAY, III
>      State Bar No. 24004246
>      Eleven Greenway Plaza, Suite 1400
>      Houston, Texas 77046
>      Telephone: (713) 961-9045
>      Facsimile: (713) 961-5341
>
>ATTORNEYS FOR DEBTOR

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via electronic mail, and/or U.S. first class mail, postage prepaid, on March 30, 2009, to the parties on the service list.

>      */s/ Edward L. Rothberg*
>      EDWARD L. ROTHBERG