IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SKYPORT GLOBAL | § | CASE NO.  08-36737-H4-11 |
| COMMUNICATIONS, INC., | § | |
| | § | |
| DEBTOR | § | Chapter 11 |

**MODIFICATIONS TO CHAPTER 11 PLAN OF REORGANIZATION FILED BY DEBTOR, SKYPORT GLOBAL COMMUNICATIONS, INC. (DOC. 223)**

Pursuant to Section 1127 of the Bankruptcy Code, the Debtor, Skyport Global Communications, Inc., hereby submits the following Modifications to the Chapter 11 Plan of Reorganization filed on May 22, 2009 (Doc. 223).

**Modifications to Article 3**

Section 3.4 shall be modified by inserting the phrase "in full" on the second line after the word "paid" and by adding the following to the end of the section:

The only Allowed Priority Tax Claim is held by the Texas Comptroller of Public Accounts in the amount of $116,446.  The quarterly payment is changed to $10,387.  The balance of the Claim held by Texas Comptroller of Public Accounts in the amount of $9,989 shall constitute a General Unsecured Claim and paid in accordance with Section 4.4 of the Plan.  Further, the Texas Comptroller of Public Accounts is exempted from Sec. 13.6.  Finally, a failure by the Reorganized Debtor to make payment to priority tax creditors pursuant to the terms of the Plan shall be an Event of Default. If the reorganized debtors fail to cure an Event of Default as to tax payments within ten (10) days after service of a written notice of default from a priority tax creditor, then a priority tax creditor may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies under applicable nonbankruptcy law, and ( c) seek such relief as may be appropriate in this court.

**Modifications to Article 4**

Section 4.2.1 through 4.2.5 shall be deleted in their entirety and replaced with the following:

4.2.1 <u>Classification of CenturyTel Claim</u>.  Class 2A consists of the Secured Claim of CenturyTel, which holds a total claim of $2.7 million. CenturyTel shall be granted an Allowed Secured Claim in the amount of $1.5 million.

4.2.2 <u>Treatment</u>.  The CenturyTel Allowed Secured Claim shall bear interest at the rate of 6% per annum and shall be paid with equal monthly payments based on a fifteen year amortization commencing December 31, 2009. The entire principal balance shall be due and payable on December 31, 2014.  The Reorganized Debtor may prepay this Claim without prepayment penalty.  CenturyTel shall retain its liens and security interests; however, the CenturyTel Allowed Secured Claim shall be secured by a lien solely on the Reorganized Debtor's interests in real estate, the City of Houston ground lease, any buildings and improvements thereon and fixtures therein, as well as the generator and related electrical equipment described in the attached Exhibit A.  Said liens shall be first and priming liens on said property in preference and priority to any and all other claims and interests. The Reorganized Debtor agrees to provide CenturyTel with confirmation of the payment of rent on the ground lease with the City of Houston.  The failure to timely pay a rental payment in accordance with the ground lease shall be a default of the obligations created hereunder.  The balance of the CenturyTel Claim in the amount of $1.2 million shall constitute a General Unsecured Claim and paid in accordance with Section 4.4 of the Plan.

4.2.3 <u>Classification of Aegis Claim</u>.  Class 2B consists of the Secured Claim of Aegis which holds a total claim in the amount of $2.5 million.  Aegis shall be granted an Allowed Secured Claim in the amount of $800,000.

4.2.4 <u>Treatment</u>.  The Aegis Allowed Secured Claim shall bear interest at the rate of 6% per annum and shall be paid with equal monthly payments based on a four year amortization commencing December 31, 2009.  The entire principal balance shall be due and payable on December 31, 2012. The Reorganized Debtor may prepay this Claim without prepayment penalty.  Aegis shall retain its pre and postpetition liens; however, the Aegis Allowed Secured Claim shall be solely secured by a lien on all existing and future general intangibles, intellectual property, equipment, inventory, investment property, contracts, personal property FCC licenses and proceeds from each, except accounts receivable and customer contracts, and the generator and related electrical equipment described in the attached Exhibit A.  Said liens shall be first and priming liens on said property in preference and priority to any and all other claims and interests.  For a period of 12 months from December 31, 2009, Aegis shall have the right to convert $100,000 of its Allowed Secured Claim to a 5% equity interest in the Reorganized Debtor.  The balance of the Aegis Claim

in the amount of $1.7 million shall constitute a General Unsecured Claim and paid in accordance with Section 4.4 of the Plan.

## Modifications to Article 9

Article 9 shall be modified by adding the following new sections 9.5 and 9.6.

9.5   The Debtor entered into a settlement with Alpheus Communications, L.P. and Alpheus Data Services, LLC agreeing, among other things, to assume two pre-petition executory contracts as modified, agreeing to a reduced cure amount, and waiving preference claims (Doc. 237). This settlement was approved by the Court pursuant to its Order Approving Compromise and Settlement dated July 7, 2009 (Doc. 259). This settlement is hereby incorporated and made part of the Plan. To the extent that anything contained in this Plan conflicts with the settlement agreement, the terms of the settlement agreement shall control. Likewise, notwithstanding anything to the contrary contained in this Plan, Alpheus' cure claim shall be paid in accordance with the settlement agreement, and Alpheus shall not be required to file any application for payment of any administrative claims relating to the assumption of Alpheus' contracts and its cure claim related thereto.

9.6   On February 26, 2009, the Court entered its Order Authorization Rejection of Non-Exclusive Service Agreement with Intelsat (Doc. 120). Notwithstanding that order, disputes remained between Intelsat and the Debtor over potential pre-petition preferential payments and the Debtor's refusal to pay for post-petition services. The Debtor and Intelsat have resolved this dispute by agreeing to: (i) grant Intelsat a $25,000 Administrative Claim payable in accordance with Section 3.2 of the Plan; (ii) grant Intelsat a $1 million General Unsecured Claim payable in accordance with Section 4.4 of the Plan; and (iii) waive all claims existing between the Debtor and Intelsat (or any of their affiliates, including Intelsat LLC, Intelsat, Ltd. and Balaton Group) and their respective agents, attorneys, officers and directors. This settlement was approved by the Court pursuant to its Agreed Order to Estimate Intelsat Claim dated July 24, 2009 (Doc. 285). This settlement is hereby incorporated and made part of the Plan.

## Modification to Article 12

Section 12.1 shall be modified by deleting the word "exclusive" on the second line.

## Modifications to Article 13

Section 13.7 shall be modified by adding a new section 13.7.4 as follows

13.7.4 Subject to confirmation of the Plan, Aegis, CenturyTel, Balaton and Robert Kubbernus on behalf of themselves, their agents, officer, directors, employees, legal representatives, attorneys, predecessors, successors, and assigns and all persons, natural or corporate, in privity with them, expressly RELEASE, ACQUIT and FOREVER DISCHARGE each other from any and all Claims, demands, responsibilities, obligations, liabilities and causes of action of whatsoever nature, statutory or otherwise, in contract or in tort, whether known or unknown, fixed or contingent; it being the intent of the parties hereto to fully and completely release all claims and settle all disputes and controversies, whether heretofore asserted or not. This mutual release has been consensually agreed to by the named parties.

DATED: July 30, 2009

        SKYPORT GLOBAL COMMUNICATIONS, INC


        By: */s/Robert Kubbernus*
            Robert Kubbernus, CEO

OF COUNSEL:

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
Edward L. Rothberg
State Bar No. 17313990
Hugh M. Ray, III
State Bar No.  24004246
Eleven Greenway Plaza, Suite 1400
Houston, TX  77046
Telephone:  713.961.9045
Facsimile:   713.961.5341

ATTORNEYS FOR SKYPORT GLOBAL COMMUNICATIONS, INC.

Exhibit A

POWER ROOM EQUIPMENT, INCLUDING BUT NOT LIMITED TO ASSORTED BATTERIES, (2) UPS MAINTENANCEBYPASS PANELBOARD CONTROL PANELS W/ SQUARE D CIRCUIT BREAKERS, ASSORTED OTHER SQUARE DCONTROL PANELS, (2) LIEBERT 150KVA UNINTERRUPTIBLE POWER MODULES, (2) LIEBERT 360A UNINTERRUPTIBLEPOWER SYSTEMS, (2) LIEBERT COOLING UNITS, (2) DISTRIBUTION 1600XL UNITS, ASSORTED RECTIFIERS, ETC.

GENERATOR, CATERPILLAR, S/N CAT00000K9EP02559, INCLUDES CATERPILLAR GEN SET3412, MFG. 2003, 750 KVA,600KW, GENERATOR MOUNTED ONTO 2,000 GALLON WELDED CARBON STEEL DIESEL FUEL TANK, ALSO INCLUDESSIMPLEX LOAD BANK MOUNTED ONTO END OF GENERATOR SYSTEM AND CONTROLS LOCATED INSIDE BUILDING [B]

AIR CONDITIONING UNITS, LIEBERT, (3) TOTAL EACH W/ LED READOUT, ALSO INCLUDES LIEBERT PRECISIONPOWER NETWORK POWER SUPPLY, EMERSON NETWORK POWER HELIOS DISTRIBUTION BAY INCLUDING METERASSEMBLY AND OTHER DISTRIBUTION PANELS, ETC.,

IRE ALARM SYSTEM, JOHNSON CONTROLS INCLUDES IFC 200 CONTROL, ETC.,