IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SKYPORT GLOBAL | § | CASE NO.  08-36737-H4-11 |
| COMMUNICATIONS, INC., | § | |
| | § | |
| DEBTOR | § | Chapter 11 |

### OBJECTION TO EXPEDITED MOTION TO TERMINATE EXCLUSIVITY
**(Docket #305)**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

SKYPORT GLOBAL COMMUNICATIONS, INC. ("Debtor" or "SkyPort"), Debtor in this Chapter 11 case, hereby objects to the expedited motion to terminate exclusivity filed by Draco Capital, Inc. (Docket No. 305, the "Motion").  The grounds for this response are as follows:

### Introduction

1. Draco's motion seeks to terminate exclusivity[1] to file a competing plan only days before the confirmation hearing.  Draco never conferred before filing the Motion.  Draco did not include the required 9013 language.  Draco did not include any evidence of an emergency or the declaration of counsel as to specific facts justifying emergency consideration.  Finally, the Motion was not served as due process requires because the motion was <u>mailed</u> August 4 seeking relief on August 7.  The confirmation hearing is set for August 7, 2009.  Most creditors will not

---

[1] The Motion also suggests that exclusivity has terminated.  Apparently, even Draco does not believe this is true, hence the Motion.  In the Order extending exclusivity, the Court stated that if the Debtor filed a plan on May 22nd then exclusivity would extend for 60 days "to allow Debtor to obtain acceptance of its Plan.'  At the Disclosure Statement Hearing, when the Court set the hearing on plan confirmation, it recognized that the confirmation hearing was late and either implicitly or explicitly extended the exclusive period under 11 U.S.C. §1121.

receive timely notice.

2. Draco's Motion is, most importantly, simply dead wrong on the facts. But for the transmission of a competing plan in violation of 11 U.S.C. §1125 and §1121, the Debtor would have sailed through confirmation, as all major creditors have accepted the terms of the Modified Plan. By proposing a competing plan illegally, Draco caused Aegis Texas Venture Fund, L.P. to vote against the plan, jeopardizing confirmation.

## The Motion Should be Denied on the Merits

3. Draco's Motion cites *In re Express One Intn'l, Inc.*, 194 B.R. 98, 101 (Bankr. E.D. Tex. 1996), which sets forth the legal bases for extending or terminating exclusivity. However, the Motion mis-states facts. In fact, the Debtor MEETS the factors:

4. <u>Factor:</u> "The existence of good faith progress toward reorganization."

- <u>Fact:</u> **The Debtor now has agreements with substantially all objecting parties, including the following:**

    ➢ CenturyTel, Inc., a secured lender

    ➢ Aegis Texas Venture Fund, L.P., the other secured lender

    ➢ Alpheus Digital Communications, service Provider

    ➢ Digital Broadcast Co, objecting customer

    ➢ CompuCom, creditor/reclamation claimant

    ➢ Hunter Communications and Globecomm, creditor

    ➢ Intelsat Corporation, administrative and unsecured creditor

5. <u>Factor:</u> "The fact that the debtor is paying its bills as they become due."

- Fact: **The Debtor is paying its debts as they come due**

6. Factor: "Whether the debtor has demonstrated reasonable prospects for filing a viable plan."

- Fact: **The Debtor filed a plan, virtually all objections have been resolved, and the requisite number of votes have been obtained (assuming the votes of CenturyTel and Aegis will be voted as represented upon approval of the compromise)**

7. Factor: "Whether the debtor has made progress in negotiations with its creditors."

- Fact: **Virtually all creditors, including Digital Broadcast, Compucomm, Globecomm, Aegis Texas Venture Fund, Centurytel, Aephus, and Intelsat have agreed to their treatment.**

8. Factor "The amount of time which has elapsed in the case."

- Fact: **Less than one year has passed.**

9. Factor: "Whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands."

- Fact**: No such pressure exists.**

10. Factor: "Whether an unresolved contingency exists."

- Fact: **No such contingency exists, as virtually all creditors have agreed to their treatment.**

11. Factor: "The size and complexity of the case."

- Fact: **The Case was enough and complex enough to justify the extension of exclusivity.**

12. <u>Factor</u>: "The necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information."

- <u>Fact</u>: **The time was needed and actually used to create a cash-flow positive Debtor and to negotiate with all creditors to reach their agreement.**

13. The Motion then cites a "transcendent" quality, that termination of exclusivity would "move the case forward". Here, the case is ready to confirm on Friday and the Motion was filed on a Tuesday. The creditors are (nearly all) agreeing to treatment. They may now be tempted to accept a different deal from Draco, who appears to have secretly solicited a plan, but that deal is not available. In any case, termination of exclusivity would move the case backwards, not forwards, to have a fight among competing plans.

14. As Draco is not the holder of shares in the Debtor, nor is it a significant creditor, one of the Debtor's chief assets, the $15 Million in net operating loss carryovers held by the Debtor[2], would likely be forfeit. The offer from Draco for a hostile takeover is not helpful to the creditors or the future reorganized Debtor.

### "Who is Draco Capital?"

15. In order to understand the context of the pleadings filed by Draco, the Court needs to understand exactly who Draco is and what it is trying to accomplish.

16. Draco is a private equity fund owned and controlled by Mr. Adrien Pouliot. Mr. Pouliot was one of the members of the Debtor's board of directors who voted to place

---

[2] Another $1.5 Million in NOL carryovers are held at the parent level.

the Debtor in Chapter 11 on October 23, 2008. Attached as Ex. A. is a copy of the Board Resolution.

17. At the commencement of the case, the Debtor was in dire need of DIP financing. Mr. Pouliot agreed to be one of the DIP lenders and the Court entered an order approving Mr. Pouliot as one of the DIP lenders. See Doc. 32.

18. Ultimately, Mr. Pouliot reneged on his agreement to be a DIP lender and the Debtor was forced to file a motion to amend the DIP Order to provide that Balaton would be the DIP Lender. See Doc. 81. Balaton is the majority shareholder of the Debtor's parent and is operated by Mr. Robert Kubbernus who is the Debtor's CEO. This motion to amend was approved by the Court (see Doc. 99) and the DIP loan was funded by Balaton.

19. Despite being aware of the existence of the case since its inception neither Draco nor Mr. Pouliot were heard from again until July 31, 2009, one day after the Debtor filed an agreed Plan Modification resolving disputes with its major secured creditors, Aegis and CenturyTel and virtually assuring plan confirmation.

20. After the filing of this Plan Modification, Draco and Pouliot rushed into action with an attempt to derail the plan by sending an alternative plan proposal to the undersigned with copies to Aegis and CenturyTel. A copy of this proposal is attached as Exhibit B. This alternative proposal was sent without obtaining approval of an adequate disclosure statement in violation of 11 U.S.C. §1125(b) and without obtaining termination of exclusivity in violation of 11 U.S.C. §1121(b). The alternative proposal caused Aegis to renege on its agreement to vote in favor of the plan as modified.

21. Further, Draco and Pouliot filed an Objection to Confirmation (Doc. 293), even though Draco is not a creditor or party in interest; attempted to purchase a small general unsecured claim (Doc. 298); filed a motion to terminate exclusivity (Doc. 306), which does not comply with the local rules; and filed a motion for expedited consideration (Doc. 309), which likewise does not comply with the local rules.

### Draco is Playing Games

22. Draco claims to have purchased a claim against the Debtor. Draco bought the claim solely to vote against the Debtor's plan and in an effort to generate standing to file the Motion. Draco did not buy the claim to realize an economic gain on the claim, but rather to speculate in litigation and propose a competing plan. When a party purchases a claim to secretly solicit a competing plan, the court should deny the relief sought by such gamesmanship. See, *In re Applegate Property, Ltd.*, 133 B.R. 827 (Bankr. W.D. Tex. 1991) (insider secretly bought claim to gerrymander plan, violation of 1125 justified denial of plan and striking votes).

23. Importantly, Draco's claim transfer violated the rules and did not attach the transfer agreement. Thus, Draco lacks standing.

24. The Court should not let Draco game the system. Draco waited until the last possible minute to buy a claim, seek to terminate exclusivity and propose a competing plan. Draco should act forthright and professionally, participate in the process lawfully, and use the bankruptcy process for the benefit of creditors. That is not what Draco has done by seeking to propose a plan days before the Debtor's Confirmation.

### The Debtor has been Injured by Draco's Violations of 11 U.S.C. §1121 and §1125

25. Courts have dealt with actions quite similar to Draco in cases in other

jurisdictions. Almost the identical situation happened in *Colorado Mountain Express, Inc. v. Aspen Limousine Serv., Inc. (In re Aspen Limousine Serv., Inc.)*, 198 B.R. 341, 348-49 (D. Colo. 1996). In *Aspen Limousine*, a plan opponent sent a letter to all of the debtor's creditors suggesting that it had an alternative plan (though no disclosure statement had been approved) and solicited a negative vote. The Court found that the action violated § 1125(b) and the District Court affirmed <u>criminal</u> contempt sanctions and a partial award of attorneys' fees. Section 105 was explicitly the vehicle for this relief.

26. Importantly, *Aspen Limousine* found that the actions in submitting the competing plan were not "good faith negotiations" but rather a sleazy attempt to torpedo the Debtor's plan and circumvent the Court's orders. The court noted that while some courts allow suggestions of alternative plans in "good faith" negotiations, sending detailed letters with an explicit plan when the exclusivity period has not ended is outside the safe harbor.

27. In the similar case of *In re: Clamp-All*, 233 B.R. 198, the Court dealt with an insider (like Mr. Pouliot) who sent an unapproved plan proposal to creditors urging them to vote against the Debtor's plan. The Court noted that 11 U.S.C. §1121 and §1125 were violated and that this action was egregious. The result was that the court *sua sponts* subordinated the claims of the would-be proponents under Section 510 and two would-be "proponents" were forbidden from filing a competing plan. The Debtor was given another chance to submit a plan. Section 105 and 510 were the statutory bases for the relief granted.

28. Likewise, *In re: Temple Retirement Community, Inc.* 80 B.R. 367 (Bankr. W.D. Tex. 1987) (L. Clark, J.) dealt with the situation of an indenture trustee who asked *permission* to send a letter to creditors outlining the proposal for an alternative plan. Judge

Clark stated:

> The suggestion of a better alternative just around the bend, unfortunately, is not backed up with full disclosure. Given that the Debtor's plan is proposed within the original exclusivity period, an alternative plan and disclosure statement cannot and should not be considered at this point in the case. For better or worse, the Bankruptcy Code was designed to give the Debtor a clear advantage early on in the case, unfettered by competing plans. That advantage disappears six months into the case. Early in the case, however, the Court is constrained to give effect to the clear policy of Congress. That policy could be undermined by thinly veiled suggestions of better alternatives, unsupported by full disclosure.

*In re Temple Retirement Community, Inc.*, 80 B.R. 367, 369 (Bankr. W.D. Tex. 1987).

29. In the Draco Plan we have the same thinly veiled "just around the corner" alternative – with no binding promise and no disclosure. This is exactly what Congress intended to avoid.

30. <u>Collier's</u> states the proposition that this Court is asked to uphold – that in opposing a plan of reorganization, the opposing party is prohibited from sending out an outline of a competing plan:

> It is then, after a particular plan has been promulgated, that the "captive investors" require adequate information about the "securities" they are being offered. For that reason it has been held that receipt of an approved disclosure statement is a prerequisite to solicitation of votes on a plan, and while **a soliciting party may not suggest an alternative unapproved plan**, it may react to and present contrary views regarding the plan reflected in the approved disclosure statement.

7-1125 Collier on Bankruptcy-15th Edition Rev. P 1125.03 (emphasis added)

31. Contempt sanctions alone would not compensate the Debtor. Indeed, the damage caused by the illegal "Draco Plan" letter may end up irreparable. Nevertheless, to mitigate against future interference, the Court is requested to award the Debtor legal fees, impose civil contempt sanctions and enjoin Draco and Pouliot (and those in active concert

with him) from filing a plan or participating in vote, plan, or disclosure statement proceedings.

## Technical Defects Plague the Motion

32. Draco's failure to follow BLR 9013 is not a minor mistake. Like other motions filed by Draco, and the transfer of the claim to Draco (which failed to attach the supporting transfer agreement under Rule 3001), Draco is not giving the creditors good notice of its actions.

33. The Debtor went out of its way to ensure that all creditors and parties in interest were given full disclosure. "The three most important words in Bankruptcy are 'disclose, disclose disclose'". *In re Hight*, 393 B.R. 484, 507 (Bankr. S.D. Tex. 2008); *In re Sanchez*, 372 B.R. 289, 305 (Bankr. S.D. Tex. 2007). Yet, in this case, Draco is acting in secret:

    i. sending the "Draco Plan" to Aegis and CenturyTel without the section 1125 disclosure or approval of the Court (or even notice);

    ii. asking for a hearing to discuss the Draco Plan without giving fair notice to all parties and the opportunity to object;

    iii. failing to disclose the terms of the transfer of its claim as required by Rule 3001; and

    iv. not disclosing that Draco is controlled by an insider.

## Conclusion

34. The Motion is flawed factually, procedurally, and equitably. Factually, it is dead wrong. The case is ready for confirmation. Procedurally, it fails to comply with the rules and afford objecting parties a reasonable time to respond. Equitably the actions of Draco justify denying the motion because Draco 1) waited until the last minute to propose the "Draco Plan", 2)

illegally sent the "Draco Plan" to the two largest creditors in an effort to change their votes and 3) improperly transferred a claim to speculate in litigation.

WHEREFORE, PREMISES CONSIDERED, the Debtor requests that the Court deny Docket #305, and grant such other and further relief to which it may show itself justly entitled.

DATED: August 5, 2009

Respectfully submitted,

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: */s/ Hugh M. Ray, III*
EDWARD L. ROTHBERG
State Bar No. 17313990
HUGH M. RAY, III
State Bar No. 24004246
Eleven Greenway Plaza, Suite 1400
Houston, Texas 77046
Telephone: (713) 961-9045
Facsimile: (713) 961-5341

ATTORNEYS FOR DEBTOR

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served via electronic mail, and/or U.S. first class mail, postage prepaid, on August 5, 2009, to the parties on the service list.

*/s/ Hugh M. Ray, III*
HUGH M. RAY, III

{SKY001\00004\0548520.DOC;2\HMR}

**MASTER SERVICE LIST**
SkyPort Global Communications; Debtor
Case # 08-36737-H4-11

| | | |
|---|---|---|
| Skyport Global Communications, Inc.<br>11140 Aerospace Ave<br>Houston, TX 77034 | Harris County, et al.<br>c/o John P. Dillman<br>Linebarger Goggan Blair & Sampson<br>P O Box 3064<br>Houston, TX 77253-3503 | Internal Revenue Service<br>Insolvency Section<br>1919 Smith MAIL STOP HOU 5022<br>Houston, TX 77002 |
| Internal Revenue Service<br>PO Box 21116<br>Philadelphia, PA 19114 | Stephen Statham<br>Office of the U. S. Trustee<br>515 Rusk, Room 3516<br>Houston, TX 77002 | William A. Frazell<br>Assistant Attorney General<br>Bankruptcy & Collections Division<br>PO Box 12548<br>Austin, TX 78711-2538 |
| Securities & Exchange Commission<br>Attn: Angela Dodd<br>175 W. Jackson Blvd, Suite 900<br>Chicago, IL 60604-2908 | Paul Bettancourt<br>P. O. Box 4622<br>Houston, TX 77210-4089 | Pasadena I.S.D.<br>Tax Assessor-Collector<br>2223 Strawberry Rd.<br>Pasadena, TX 77501 |
| Balaton Group, Inc.<br>11140 Aerospace Ave<br>Houston, TX 77034 | Farnum Street Financial<br>Attn: Ross Abrams<br>240 Pondview Plaza<br>5850 Opus Parkway<br>Minnetonka, MN 55343 | AEGIS Texas Venture Fund, LP<br>Attn: Kevin Dragan<br>11000 Richmond, Suite 550<br>Houston TX 77042 |
| CenturyTel, Inc.<br>Attn: Stewart Ewing, CFO<br>100 CenturyTel Drive<br>Monroe, Louisiana 71203 | CenturyTel, Inc.<br>c/o Rex D. Rainach<br>A Professional Law Corporation<br>3622 Government Street<br>Baton Rouge, LA 70806-5720 | Brad Lee<br>Bankruptcy Specialist<br>XO Communications, LLC<br>105 Malloy Street<br>Nashville, TN 37201 |
| Intelsat USA Sales Corp.<br>Attn: Chris Nibecker<br>3400 International Drive NW<br>Washington DC 20008 | Telesat Network Services, Inc.<br>Attn: Richard O'Reilly<br>1601 Telesat Court<br>Ottawa<br>Ontario, Canada ON K1B 5P4 | EchoStar Corp.<br>Attn: Rhonda Parson<br>90 Inverness Circle East<br>Englewood, CO 80112 |
| SES New Skies Satellites, BV<br>Attn: Scott Sprague<br>2001 L Street, Suite 800<br>Washington, DC 20036 | AboveNet<br>Attn: Thomas L. Kelly<br>360 Hamilton Ave., 7th Floor<br>White Plains, NY 10601 | The Spaceconnection, Inc.<br>Attn: Deborah Williams<br>PO Box 6067<br>Burbank, CA 91510-6067 |
| Klabzuba Properties, Ltd.<br>Attn: Robert B. Higgs<br>14405 Walters Road, Suite 800<br>Houston, TX 77014 | VT iDirect Iinc.<br>Attn: Geneza Simoes<br>13865 Sunrise Valley Drive<br>Herndon, VA 20171 | Alpheus Communications, L.P.<br>Alpheus Data Services<br>c/o Stephen W. Crawford, General Counsel<br>1301 Fannin Street, 20th Floor<br>Houston, TX 77002 |
| Seyfarth Shaw LLP<br>Attn: Christina Putnam<br>700 Louisiana, Suite 3700<br>Houston, TX 77002 | Longbottom Communications<br>Attn: Penelope Longbottom<br>2343 N. Vernon St.<br>Arlington, VA 22207 | CompuCom<br>Attn: Minnie Morrison<br>7171 Forest Lane<br>Dallas, TX 75230 |

| | | |
|---|---|---|
| Houston Airport System<br>Attn: Scott Feldman<br>City of Houston<br>PO Box 60106<br>Houston, TX 77205-0106 | Robert Half Technology<br>Attn: Ron Ravin<br>5720 Stone Ridge, Suite 3<br>Covington, CA 94588 | |
| DataPath, Inc.<br>Attn: Betty Herrington<br>3095 Satellite Boulevard<br>Duluth, GA 30096 | XO Communications<br>Attn: Scott Harrison<br>2401 Portsmouth, Suite 200<br>Houston, TX 77098 | Verizon Wireless<br>Attn: Alexis B. Murray<br>PO Box 660108<br>Dallas, TX 75266-0108 |
| Wilkinson, Barker, Knauer LLP<br>Attn: Bob Primosch.<br>2300 N Street NW, Suite 700<br>Washington, DC 20038-1128 | Balaton Group, Inc.<br>Seyfarth Shaw LLP<br>Attn: Walter Cicack<br>700 Louisiana, Suite 3700<br>Houston, TX 77002 | Pasadena Independent School District<br>c/o Law Office of Dexter D. Joyner<br>4701 Preston Ave.<br>Pasadena, TX 77505 |
| AEGIS Texas Venture Fund, LP<br>c/o Kyung Lee / Jason Rudd<br>Diamond McCarthy Taylor Finley & Lee<br>909 Fannin, Suite 1500<br>Two Houston Center<br>Houston, Texas 77010 | Digital Networks, LLC<br>c/o William H. Hoch, III<br>Crowe & Dunlevy<br>20 N. Broadway, Suite 1800<br>Oklahoma City, OK 73102 | Globecomm Systems Inc<br>Attn: Julia Hanft, General Counsel.<br>45 Oser Avenue<br>Hauppauge, NY 11788 |
| Farnam Street Financial, Inc.<br>c/o Larry B. Ricke<br>Spence, Ricke, Sweeney & Gernes<br>Suite 600, Degree of Honor Building<br>325 Cedar Street<br>St. Paul, MN 55101 | Cisco Capital<br>c/o Thomas M. Gaa<br>Bialson, Bergen & Schwab<br>2600 El Camino Real, Suite 300<br>Palo Alto, California 94306 | PAETEC<br>c/o Shannon I. Sullivan<br>Specialist - Revenue Assurance<br>PO Box 3177<br>Cedar Rapids, IA 52406-3177 |
| Intelsat, Ltd.<br>c/o Herrick Feinstein LLP<br>Attn Stephen Selbst<br>Two Park Avenue<br>New York, NY 10016 | William R. Greendyke<br>Jason L. Boland / Travis A. Torrence<br>Fulbright & Jaworski LLP<br>1301 McKinney, Suite 5100<br>Houston, TX 77010 | Sunrise Campus Investors dba<br>BPG Properties, Ltd<br>Attn: Roger Byecroft & Keith Knight<br>11130 Sunrise Valley Drive, Suite 100<br>Reston, VA 20191 |
| Intrado, Inc.<br>Attn: Elaine Stuart<br>1601 Dry Creek Drive<br>Longmont, CO 80503 | Deloitte & Touche LLP<br>Attn Francesca Filippelli, Sr. Legal Specialist<br>30 Wellington Street West<br>P O Box 400, Stn Commerce Court<br>Toronto, ON M5L 1B1, Canada | SES New Skies Satellites, Inc.<br>c/o Philip W. Allogramento III<br>Stephen V. Falanga / Connell Foley LLP<br>85 Livingston Ave.<br>Roseland, NJ 07068 |
| Verizon Wireless<br>P.O. Box 3397<br>Bloomington, IL 61702 | Ambius<br>P.O. Box 95409<br>Palatine, IL 60095-0409 | Patrick K. Brant<br>10186 Hillington Court<br>Vienna, VA 22182 |
| Brett J. Kitei<br>Corporate Counsel<br>DISH Network L.L.C.<br>9601 South Meridian Boulevard<br>Englewood, Colorado 80112 | Michael R. Rochelle / Kathleen M. Patrick<br>Rochelle McCullough LLP<br>325 N. St. Paul St., Suite 4500<br>Dallas, TX 75201 | Digital Networks, LLC<br>c/o John F. Higgins<br>Porter & Hedges, LLP<br>1000 Main Street, 36th Floor<br>Houston, TX 77002 |
| iDirect, Inc.<br>c/o H. Jason Gold / Dylan G. Trache<br>Wiley Rein LLP<br>7925 Jones Branch Drive, Suite 6200<br>McLean, VA 22102 | Alpheus Data Services, LLC<br>c/o William R. Greendyke<br>Jason L. Boland / John D. Cornwell<br>Fulbright & Jaworski LLP<br>1301 McKinney, Suite 5100<br>Houston, TX 77010 | Advanced Projects International Inc.<br>c/o Calvin Braun<br>Adair & Myers, PLLC<br>3120 Southwest Freeway, Suite 320<br>Houston, TX 77098 |

| | | |
|---|---|---|
| Advanced Projects International Inc.<br>c/o Kenneth English<br>Gaw, Van Male, Smith, Myers & Miroglio<br>1000 Main Street<br>Napa, CA 94559 | Data Technology Solutions, LLC<br>c/o Bryan E. Lege<br>Kraft Gatz Lane Benjamin LLC<br>600 Jefferson St., Suite 410<br>Lafayette, LA 70501 | San Jacinto Community College Dist.<br>Attn: Daniel J. Snooks<br>11550 Fuqua, Suite 490<br>Houston, TX 77034 |
| Drillsite Broadcast Co.<br>c/o Collin D. Porterfield<br>Law office of Collin D. Porterfield<br>5956 Sherry Lane, Suite 1616<br>Dallas TK 75225 | Gloster Holdings, LLC<br>c/o Samuel Goldman & Associates<br>100 Park Avenue, 20th Floor<br>New York, NY 10017 | John C. Ivascu<br>Vinson & Elkins LLP<br>1001 Fannin Street, Suite 2500<br>Houston, TX 77002-6760 |
| John E. Mitchell<br>Vinson & Elkins L.L.P.<br>2001 Ross Avenue, Suite 3700<br>Dallas, TX 75201-2975 | | |