ENTERED
08/12/2009

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

IN RE: §
 §
SKYPORT GLOBAL § CASE NO. 08-36737-H4-11
COMMUNICATIONS, INC., §
 §
 §
DEBTOR § Chapter 11

## ORDER CONFIRMING
## PLAN OF REORGANIZATION, AS MODIFIED

On May 22, 2009, the Debtor, Skyport Global Communications, Inc. ("Skyport" or "Debtor"), as debtor-in-possession, filed its Chapter 11 Plan of Reorganization (the "Plan") (Doc. 223). On July 8, 2009, Skyport filed its First Amended Disclosure Statement ("Disclosure Statement") (Doc. 264). On July 30, 2009, the Debtor filed its Modifications to Chapter 11 Plan or Reorganization ("Modification") (Doc. 289). The Chapter 11 Plan of Reorganization and the Modification are hereafter referred to as the "Plan." [1]  The Court set a confirmation hearing on August 7, 2009 at 8:30 a.m. The Debtor and its counsel appeared at the confirmation hearing at which the Court heard testimony and arguments of counsel and considered the evidence. After considering the foregoing, the ballots, the objections filed to confirmation of the Plan, the evidence and testimony, and the arguments of counsel:

## THE COURT HEREBY FINDS AND DETERMINES AS FOLLOWS:

### I. Background

1.      This Chapter 11 bankruptcy case was filed on October 24, 2008 ("Petition Date") under Chapter 11 of Title 11 of the Bankruptcy Code, 11 U.S.C. §§101 et sq. (the

---

[1]Capitalized terms not defined in this Order shall have the meanings set forth in the Plan.

"Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

2.  This Court has jurisdiction over the subject matter of the Debtor's Chapter 11 case pursuant to 28 U.S.C. §1334. The hearing on the confirmation of the Plan and the transactions and matters set forth therein is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (F), (H), (I), (J), (L), (M) and (O). The statutory predicates for confirmation of the Plan, and approval of the transactions and matters set forth therein, are 11 U.S.C. §§ 1121-1142.

3.  The Plan contemplates a reorganization of the Debtor with revenue derived from operations to be utilized to fund payments under the Plan.

4.  The Disclosure Statement referring to the Plan was approved by the Court on July 8, 2009 (Doc. 265).

5.  On July 9, 2009, the Debtor served (i) the Plan, (ii) the Disclosure Statement, (iii) the Order Approving Disclosure Statement, Setting Deadlines for Voting, and Objections and Setting Confirmation Hearing, (iv) Ballot with which to vote on the Chapter 11 Plan and (vi) Memo to all creditors and parties in interest including plan solicitation, notice of Confirmation Hearing and related deadlines to Creditors.

6.  On July 30, 2009, the Debtor filed the Modification to reflect a comprehensive settlement reached with its major secured creditors Aegis Texas Venture Fund ("Aegis") and CenturyTel. The Modification also clarified treatment for the State of Texas sales tax claim and to incorporate settlements reached with Alpheus Communications, L.P., Alpheus Data Services, LLC, and Intelsat.

7.  The Debtor served the Modification on all known creditors, parties in interest and parties requesting notice as set forth in the Certificate of Service attached to the Modification. No creditor or party in interest has objected to the Modification.

8.  The Modification does not materially and adversely affect any creditor or party in interest who has already voted on the Plan.

9.  The Court finds that notice of the matters described in paragraphs five (5), six (6) and seven (7) to the creditors and parties in interest of the Debtor was adequate and appropriate.

10.  The Plan separates Claims into four classes and Interests into one class. The treatment of each class varies as set forth in the Plan.

## II.   Votes, Objections, and Resolutions

11.  Class 1 Claims consist of the Allowed Secured Claims of ad valorem taxing authorities.  The Plan provides that the Class 1 Claims shall be paid by the Debtor in full with twelve quarterly payments beginning December 31, 2009, in the amount of $7,414 each with interest at the statutory rate of 12%. The Class 1 Claims are impaired, did not vote, and did not object to confirmation.

12.  Class 2A consists of the Allowed Secured Claims of CenturyTel in the amount of $1.5 million, secured by real estate, fixtures and certain personal property. The Plan provides that the Class 2A Allowed Secured Claim shall bear interest at the rate of 6% per annum and shall be paid with equal monthly payments based on a fifteen year amortization commencing December 31, 2009.  The entire principal balance shall be due and payable on December 31, 2014.  Class 2A is impaired and did not vote.  The Court determined that Class 2A was deemed to have accepted the Plan.

13.     Class 2B consists of the Allowed Secured Claims of Aegis in the amount of $800,000 secured by substantially all of the Debtor's assets other than the real estate assets, fixtures, and personal property described in Exhibit A of the Plan Modification pledged to CenturyTel.   The Plan provides that the Class 2B Claim shall bear interest at the rate of 6% per annum and shall be paid with equal monthly payments based on a four year amortization commencing December 31, 2009.  The entire principal balance shall be due and payable on December 31, 2012.  Class 2B is impaired, and originally voted to reject the Plan.  During the confirmation hearing, the Debtor modified the treatment of the Class 2B Claim by deleting the option for Aegis to convert $100,000 of its claim to a 5% equity interest in the Reorganized Debtor and replaced it with a provision that grants Aegis, on the Effective Date, 5% of the newly issued stock of the Reorganized Debtor free and clear of the liens, claims, interests and encumbrances of any Claim of Creditors or Equity Interests, without the need to convert any of Aegis' secured claim.  Based on this modification, Aegis announced its support for confirmation of the Plan.

14.     Class 3 consists of the post-petition secured debtor in possession loan ("DIP Loan") in the amount of $150,000 and a pre-petition general unsecured claim in the amount of $1,945,603 million held by Balaton.  In exchange for all of its Allowed Secured and Unsecured pre and post petition Claims, Balaton shall receive 95% of the newly issued stock of the Reorganized Debtor free and clear of the liens, claims, interests and encumbrances of any Claim of Creditors or Equity Interests.  The Class 3 is impaired and voted to accept the Plan.

15.     Class 4 consists of Allowed Unsecured Claims.  The Plan provides that the Class 4 Claims will receive their Pro Rata share of $300,000 payable in twelve equal

Case 08-36737   Document 337   Filed in TXSB on 08/11/09   Page 5 of 45

quarterly installments with no interest commencing December 31, 2009. Class 4 voted to accept the Plan.

16.     Class 5 consists of the Interests of shareholders. The Plan provides that Class 5 shall receive no distribution or any property under the Plan on account of said Equity Interest, said Equity Interests shall be cancelled. Class 5 is deemed to have rejected the Plan.

17.     The Debtor received several objections to confirmation of the Plan. The resolution of each one is as follows:

       a.      Intelsat (Doc. 275). This objection was resolved by a settlement.

       b.      Hunter Communications (Doc. 304). This objection was resolved by amendment to Plan Exhibit A.

       c.      CenturyTel (Doc. 291). CenturyTel withdrew its objection during the confirmation hearing.

       d.      Aegis (Doc. 294).   Aegis withdrew its objection during the confirmation hearing.

       e.      Draco Capital ("Draco") (Doc. 293, 299). These objections were both dismissed for lack of standing by separate Court order.

18.     The Court finds that the Debtor has satisfied all applicable provisions of 11 U.S.C. §1129(a).

19.     The Court finds that the Debtor has complied with all applicable provisions of the Bankruptcy Code.

20.     The Court finds that the Plan has been proposed in good faith and not by any means forbidden by law.

Case 08-36737   Document 337   Filed in TXSB on 08/11/09   Page 6 of 45



## ~~III.~~ Order



It is therefore **ORDERED** that:

21.     The above findings are incorporated herein and made the order of the Court.

22.     The terms of the Plan and the Modification are appropriate and approved, as provided for herein.

23.     All creditors and interest holders who have previously accepted the Plan are hereby deemed to have accepted the Modification.

24.     The time limits provided for in the Plan are appropriate and approved.

25.     The Plan, as modified is confirmed.  Copies of the Plan and Modification are attached hereto as Exhibits "A" and "B".

26.     Pursuant to Article 3.1 of the Plan, any holder of an Administrative Claim against the Debtor, except the U.S. Trustee with respect to quarterly fees and for expenses incurred in the ordinary course of operating the Debtor's business, shall file proof of such Claim or application for payment of such Administrative Claim on or within thirty (30) days after the Confirmation Date, with actual service upon counsel for the Debtor or such Holder's Administrative Claim will be forever barred and extinguished and such Holder shall, with respect to any such Administrative Claim be entitled to no distribution and no further notices.  All pre-confirmation U.S. Trustee fees due as of the Effective Date shall be paid when due or on the Effective Date.  The Reorganized Debtor shall timely pay post-confirmation fees owed to the United States Trustee and assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this Chapter 11 case.  After confirmation,

the Reorganized Debtor shall file with the Bankruptcy Court and shall transmit to the United States Trustee a true and correct statement of all disbursements made by the Reorganized Debtor for each quarter, or portion thereof, that this Chapter 11 case remains open in a format prescribed by the United States Trustee.

27.     Except as provided otherwise in the Plan, and subject only to the occurrence of the Effective Date of the Plan, the Debtor be and is hereby discharged from all debts that arose before the date of the entry of this Order, including, without limitation, any debts based on the Debtor's guarantees of collection, payment or performance of any obligation of the Debtor, and any debt of a kind specified in §§ 502(g), 502(h) or 502(i) of the Code, other than (A) Administrative Expenses (as such term is defined in the Plan) representing liabilities incurred in the ordinary course of business by the Debtor, and (B) Administrative Expenses representing allowances of compensation or reimbursement of expenses allowed pursuant to §§ 330 and 503(b)(3) of the Code, whether or not (i) a Proof of Claim based on such debt is filed or deemed filed under § 502 of the Code; (ii) such claim is allowed under § 502 of the Code; or (iii) the holder of such claim has accepted the Plan.

28.     Subject only to the occurrence of the Effective Date of the Plan, any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the Debtor with respect to any debt discharged hereunder is hereby rendered null and void.

29.     Except as otherwise provided in the Plan, and subject only to the occurrence of the Effective Date of the Plan, all property of the Debtor's estate and all

other property dealt with by the Plan owned by the Debtor be and hereby is vested in the Reorganized Debtor free and clear of all claims and interest of creditors of the Debtor.

**30.     Except as provided in the Plan or this Order, as of the Confirmation Date, all entities which have held, currently hold or may hold a claim or other debt or liability against the Debtor that is discharged are permanently enjoined from taking any of the following actions on account of such discharged claims, debts or liabilities or terminated interests or rights: (i) commencing or continuing in any manner, any action or other proceeding against the Debtor or its properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or other award against the Debtor or its properties; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor or its properties; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or its properties; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the Plan.**

31.     The respective affiliates, officers, directors, shareholders, members, representatives, attorneys, financial advisors, and agents of the Debtor, the Reorganized Debtor, have acted in good faith, and each of those parties are hereby forever released from and shall not be liable to any holder of a Claim, or other party with respect to any action, forbearance from action, decision, or exercise of discretion taken from the Petition Date to the Effective Date in connection with (i) the operation of the Debtor or the Reorganized Debtor; (ii) the proposal or implementation of any of the transactions provided for, or contemplated in, the Plan or the Plan Documents; or (iii) the

administration of the Plan or the assets and property to be distributed pursuant to the Plan and the Plan Documents. Notwithstanding anything else contained herein, or in the Plan, the exculpation provisions contained in Section 13.8 of the Plan and approved hereby shall not act to exculpate Balaton Group, Inc., Robert Kubbernus, or Clear Sky Management, Inc. with respect to any claims of, transactions, dealings or relationships with Draco Capital, Inc., or Clear Sky Investments, L.P., their investors and affiliates.

32.     Except as expressly set forth in the Modification, pursuant to Section 13.7 of the Plan, all officers, directors and professionals of the Debtor are hereby released from any and all causes of action held by the Debtor. Notwithstanding anything else contained herein, or in the Plan, the releases contained in Section 13.7 of the Plan and approved hereby shall not act to release any claims or causes of action held by Draco Capital, Inc., Clear Sky Management, Inc., Clear Sky Investments, L.P, their investors, partners or affiliates against any person or entity other than the Debtor and the Reorganized Debtor.

33.     All rights of the holders of claims or interests of all classes under the Plan, including, without limitation, the right to receive distributions on account of such Claims or interests, shall hereinafter be limited solely to the right to receive such distributions exclusively as provided in the Plan, and, to the extent applicable, the provisions of this Order. After the date hereof, the holders of such claims or interests shall have no other or further rights against the Debtor except as provided for in the Plan and this Order.

34.     The Debtor and the Reorganized Debtor are hereby authorized and empowered pursuant to Section 1142(b) of the Bankruptcy Code to issue, execute, deliver, file or record any documents, and to take any action necessary or appropriate to

implement, effectuate and consummate the Plan, and the matters contemplated by this Order Confirming Plan, in accordance with their respective terms, whether or not specifically referred to in the Plan or any exhibit thereto and without further application to or order of this Court. Specifically, the merger of Skycomm into Skyport is approved such that Skyport will be the surviving entity. To the extent the Plan, as modified, provides for a creditor to release a Lien, Claim, Encumbrance or Interest, such creditor shall execute a release of any such Lien, Claim, Encumbrance or Interest at the request of the Reorganized Debtor.

35.     Pursuant to 11. U.S.C. § 1141(a), the provisions of the Plan are binding on all parties, including, but not limited to, creditors and equity security holders of the Debtor whether or not any such creditors or equity holders have accepted the Plan.

36.     The failure specifically to include any particular provisions of the Plan in this Order shall not diminish or impair the efficiency of such provision, it being the intent of the Court that the Plan be authorized and approved in its entirety.

37.     So long as such amendments or modifications do not materially affect the interests of creditors or the interest holders, the proponent of the Plan may propose amendments or modifications to the Plan after the entry of this Order, subject to, upon notice and hearing, the approval of this Court, in order to remedy any defect or omission, or reconcile any inconsistencies in the Plan or in this Order, as may be necessary to carry out the purpose and intent of the Plan.

38.     After the entry of this order, pleadings shall only be served upon the United States Trustee, and any party directly affected by the pleading and its counsel, if

Case 08-36737   Document 337   Filed in TXSB on 08/11/09   Page 11 of 45

known (*i.e*, claims objections need only be served upon the person who filed the claim that is subject to the objection, its counsel, if known, and the United States Trustee).

39.     To the extent that objections to the Plan are not specifically sustained herein, they are overruled and denied.

40.     The reversal or modification of this Order on appeal will not affect the acts taken pursuant to the Plan, or any other agreement, document, instrument or action authorized by this Order or under the Plan as to the Debtor or any other person acting in good faith, whether or not such person knows of the appeal, unless this Order is stayed pending appeal.

41.     This Court retains jurisdiction (i) to enforce and implement the terms and provisions of the Plan and this Order, all amendments thereto, any waivers and consents herein provided, and any agreements executed in connection herewith, (ii) to resolve any disputes arising under or related to this Order or the Plan, and (iii) to interpret, implement and enforce the provisions of this Order.

SIGNED:   _August 12, 2009_

_____

UNITED STATES BANKRUPTCY JUDGE

APPROVED AS TO FORM AND SUBSTANCE:

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.


By:___*Edward L. Rothberg*_____
       Edward L. Rothberg
       State Bar No. 17313990
       Hugh M. Ray, III
       State Bar No. 24004246
       Eleven Greenway Plaza, Suite 1400
       Houston, TX 77046
       Telephone: 713.961.9045
       Facsimile: 713.961.5341

ATTORNEYS FOR SKYPORT GLOBAL COMMUNICATIONS, INC.


DIAMOND MCCARTHY, LLP


By:_____*/s/Jason M. Rudd*_____
       Jason M. Rudd
       State Bar No. 24028786
       909 Fannin, Suite 1500
       Houston, TX 77010
       Telephone: 713.333.5100
       Facsimile: 713.333-5195

ATTORNEYS FOR AEGIS TEXAS VENTURE FUND, L.P.


APPROVED AS TO FORM ONLY:

VINSON & ELKINS, LLP


By:__*John E. Mitchell*_____
       John E. Mitchell
       State Bar No. 00797095
       2001 Ross Avenue, Suite 3700
       Dallas, TX 75201-2975
       Telephone: 214.220.7766
       Facsimile: 214.999.7766

ATTORNESY FOR DRACO CAPITAL, INC.

Case 08-36737   Document 340   Filed in TXSB on 08/12/09   Page 13 of 45
Case 08-36737   Document 337   Filed in TXSB on 08/11/09   Page 13 of 45
Case 08-36737   Document 223   Filed in TXSB on 05/22/09   Page 1 of 27

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SKYPORT GLOBAL | § | CASE NO. 08-36737-H4-11 |
| COMMUNICATIONS, INC., | § | |
| | § | |
| DEBTOR | § | Chapter 11 |

### CHAPTER 11 PLAN OF REORGANIZATION

Respectfully submitted,

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
EDWARD L. ROTHBERG
State Bar No. 17313990
HUGH M. RAY, III
State Bar No. 24004246
1400 Summit Tower
Eleven Greenway Plaza
Houston, Texas 77046
Telephone:      (713) 961-9045
Facsimile:      (713) 961-5341
Email:          erothberg@wkpz.com
                hray@wkpz.com

ATTORNEYS FOR DEBTOR



1

Case 08-36737   Document 248   Filed in TXSB on 08/12/09   Page 2 of 45
Case 08-36737   Document 223   Filed in TXSB on 05/22/09   Page 14 of 27
Case 08-36737   Document 337   Filed in TXSB on 08/11/09   Page 14 of 45

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **SKYPORT GLOBAL** | § | **CASE NO. 08-36737-H4-11** |
| **COMMUNICATIONS, INC.,** | § | |
| | § | |
| **DEBTOR** | § | **Chapter 11** |

## CHAPTER 11 PLAN OF REORGANIZATION

SkyPort Global Communications, Inc. ("SkyPort" or "Debtor"), proposes the following

Chapter 11 Plan (the "Plan") in this proceeding for the resolution of outstanding creditor claims

and equity interests pursuant to Chapter 11 of the Bankruptcy Code. The Debtor is the

proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code. All holders

of claims against and equity interests in the Debtor are encouraged to read the Plan and

accompanying Disclosure Statement in their entirety before voting on the Plan.

### ARTICLE 1
### INTRODUCTION AND GENERAL PURPOSES OF THE PLAN

SkyPort operates a satellite telecommunications business headquartered in Houston,

Texas. Secured financing for the development of SkyPort was originally provided by

CenturyTel through SkyComm. Later on, additional financing was provided to the Debtor by

the Aegis Texas Venture Fund ("Aegis"). There is a dispute between Aegis and Century Tel

over the priority of their liens. This Plan proposes no settlement of this dispute, but escrows

money pending their resolution of the lien priority. Otherwise, the Plan provides for

restructure of the existing debts and payment to Creditors by the Reorganized Debtor over time

from operational cash flow as follows: (1) Allowed Administrative Claims and Priority Non-Tax

Claims will be paid in cash in full; (2) the Allowed Ad Valorem Claims of Taxing Authorities

2

will be paid in full with twelve equal quarterly installments including interest at the statutory rate; (3) Allowed Priority Tax Claims will be paid in full with twelve equal quarterly cash payments including interest at the statutory rate; (4) the Allowed Secured Claims will be paid either a) $1.7 million in twelve stair-stepped quarterly principal payments plus interest at the rate of 4.25%, or b) as agreed by both Aegis and CenturyTel, a lump-sum payment of $800,000; (5) All Claims of Balaton will be voluntarily exchanged for new stock in the Reorganized Debtor (merged with SkyComm) and comprehensive releases; (6) Allowed General Unsecured Claims will receive a *pro rata* share of twelve quarterly payments in the amount of $25,000 each (total of $300,000) without interest and the Net Proceeds of Avoidance Actions in full satisfaction of their Claims; (7) the Equity Interest Holder of the Debtor will have its stock cancelled and the Debtor will be merged into SkyComm to form the Reorganized Debtor.

## ARTICLE 2
### DEFINITIONS

2.1     For purposes of the Plan the following terms shall have the respective meanings specified as follows:

2.1.1     Administrative Claim shall mean any Claim that is defined in Section 503(b) of the Bankruptcy Code as being an "administrative expense" within the meaning of such section and referenced in Bankruptcy Code Section 507(a)(1) including, without limitation, the actual, necessary costs and expenses of preserving the Debtor's estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the case, compensation for legal and other services and reimbursement of expenses Allowed or awarded under Bankruptcy Code Sections 330(a) or 331, and all fees and charges assessed against the estate of the Debtor under title 28 of the United States Code.

2.1.2     Aegis shall mean the Aegis Texas Venture Fund.

2.1.3     Allowed Claim or Allowed Interest shall mean a Claim or Interest (a) in respect of which a proof of claim or application has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy

Rule 1007(b) and not listed as Disputed Claims or contingent or liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy Rule 3001 or an order of the Bankruptcy Court, or this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending or as otherwise allowed under this Plan.  An Allowed Claim may refer to a Secured Claim, a General Unsecured Claim, an Administrative Claim or a Priority Claim as the context provides.

2.1.4    Avoidance Actions shall mean those causes of action provided for under Sections 547 to 551 of the Bankruptcy Code, causes of action under applicable non-bankruptcy law for fraudulent transfer or similar legal theories.

2.1.5    Balaton shall mean Balaton Group, Inc., an entity which owns stock in SkyComm, and who made both pre- and post-petition loans and equity contributions to the Debtor.

2.1.6    Bankruptcy Code shall mean the Bankruptcy Code, 11 U.S.C. §101 *et seq.*, as it existed on the Filing Date.

2.1.7    Bankruptcy Court shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, in which the Debtor's Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

2.1.8    Bankruptcy Estate shall mean all of the assets owned by the Debtor and its estate.

2.1.9    Bankruptcy Rules shall mean the rules of procedure in bankruptcy cases applicable to cases pending before the Bankruptcy Court and local bankruptcy rules as adopted by the Bankruptcy Court.

2.1.10    Bar Date shall mean March 4, 2009, established by the Bankruptcy Court as the dates by which proofs of claim had to be filed.

2.1.11    Cash shall mean Cash and Cash equivalents including, without limitation, checks and wire transfers.

2.1.12    Claim shall have the meaning given in Section 101 of the Bankruptcy Code, to wit, any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor in existence on or before the Filing Date, whether or not such right to payment or right to equitable remedy is reduced to

4

judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, Disputed, undisputed, legal, secured or unsecured whether or not asserted.

2.1.13   Class shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article 4.

2.1.14   Class 1 Claims, Class 2 Claims, Class 3 Claims, and Class 4 Claims, shall mean the Claims so classified in Section 4.

2.1.15   Class 5 Interests shall mean the Allowed Interests so classified in Section 4.

2.1.16   Confirmation Date shall mean the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

2.1.17   Confirmation Hearing shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

2.1.18   Confirmation Order shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.1.19   Creditor shall mean any entity holding a Claim.

2.1.20   Debtor shall mean SkyPort.

2.1.21   Disbursing Agent shall mean the Debtor.

2.1.22   Disclosure Statement shall mean the written document filed by the Debtor in accordance with Section 1125(b) of the Bankruptcy Code containing information sufficient to enable a hypothetical reasonable investor typical of Holders of Claims or Interests of the relevant Class to make an informed judgment about this Plan.

2.1.23   Disallowed Claim shall mean any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

2.1.24   Disputed Claim shall mean that portion (including, where appropriate, the whole) of any Claim (other than an Allowed Claim) that (a) is listed in the Debtor's schedules of liabilities as disputed, contingent, or unliquidated; (b) is listed in the Debtor's schedules of liabilities and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim exceeds the scheduled amount; (c) is not listed in the Debtor's schedules of liabilities, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (d) as to which an objection has been filed and has not become an Allowed Claim.

5

2.1.25    <u>Effective Date</u> shall mean the later of the date upon which the Confirmation Order becomes a Final Order.

2.1.26    <u>Equity Interest</u> shall mean the interests represented by an "equity security" as defined in Section 101 of the Bankruptcy Code.

2.1.27    <u>Executory Contract(s)</u> shall mean any Pre-petition Unexpired lease(s) or executory contract(s) of the Debtor within the meaning of Section 365 of the Bankruptcy Code.

2.1.28    <u>Filing Date</u> shall mean October 24, 2008, the date SkyPort filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

2.1.29    <u>Final Order</u> shall mean an order or judgment of a Court which has become final in accordance with law, and which has not been stayed pending appeal.

2.1.30    <u>General Unsecured Claim</u> shall mean either (i) a Claim that is not secured by a lien, security interest or other charge against or interest in property in which Debtor has an interest or which is not subject to setoff under Section 553 of the Bankruptcy Code; (ii) a Claim that is not a Secured Claim; (iii) a Claim that is not an Administrative Claim; (iv) a Claim that is not a Priority Claim; or (v) a Claim that is not otherwise entitled to priority under Bankruptcy Code Sections 503 or 507.

2.1.31    <u>Holder</u> shall mean the owner or Holder of any Claim or Interest.

2.1.32    <u>Interest</u> shall mean an Interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Equity Security Holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

2.1.33    <u>Insider</u> has the definition ascribed to it under the Bankruptcy Code.

2.1.34    <u>Lien</u> shall mean a "lien" as defined in Section 101(37) of the Bankruptcy Code.

2.1.35    <u>Net Proceeds</u> means, for any cash recovery, the funds remaining after a final judgment on an Avoidance Action, net of all legal fees (and/or contingency legal fees), costs and expenses of suit. The Net Proceeds, for any non-cash recovery, is the amount of cash remaining after the final judgment and recovery of non-cash asset is liquidated and the cash proceeds are distributed net of all legal fees, costs and expenses of suit. Compromises of Avoidance Actions may include cash or benefits to the Debtor or Reorganized Debtor and are not Net Proceeds.

2.1.36    <u>Non-Tax Priority Claims</u> shall mean any Claim that is defined in Section 507(a)(2)-(7) of the Bankruptcy Code.

2.1.37    <u>Person</u> shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

2.1.38    <u>Plan</u> shall mean this Chapter 11 Plan, as altered, modified or amended in accordance with the terms hereof in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

2.1.39    <u>Priority Tax Claims</u> shall mean any Claim that is defined in Section 507(a)(8) of the Bankruptcy Code.

2.1.40    <u>Professionals</u> shall mean all professionals employed in this case pursuant to Section 327 or 1103 of the Bankruptcy Code.

2.1.41    <u>Pro-Rata</u> shall mean the proportion that the Allowed amount of such Claim bears to the aggregate amount of Claims in each respective Class.

2.1.42    <u>Reorganized Debtor</u> shall mean SkyPort immediately after the Effective Date.

2.1.43    <u>Secured Claim</u> shall mean a Claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the Holder of such Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

2.1.44    <u>SkyComm.</u> shall mean SkyComm Technologies Corporation (a Delaware Corporation), the 100% shareholder of the Debtor.

2.1.45    <u>SkyPort</u> shall mean the Debtor, SkyPort Global Communications, Inc. in Case No. 08-36767-H4-11

2.1.46    <u>Substantial Consummation</u> shall occur on the Effective Date.

2.2    <u>Interpretation</u>.    Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective sections, articles of or exhibits to the Plan, as the same may be amended, waived or modified from time to time. The headings and table of contents in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa and words denoting one gender shall include the other gender. All exhibits and schedules attached to the Plan are incorporated herein by such attachment.

7

2.3     Application of Definitions and Rules of Construction Contained in the Bankruptcy Code. Words and terms defined in Section 101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

## ARTICLE 3
### ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Claims have not been classified and are treated and described in this section.

3.1     Administrative Claims Bar Date. Any Holder of an Administrative Claim (including any cure Claims for executory contracts or leases that are assumed pursuant to this Plan, including Lease Claims) against the Debtor, except for administrative expenses incurred in the ordinary course of operating the Debtor's business, shall file an application for payment of such Administrative Claim on or within sixty(60) days after entry of the Confirmation Order with actual service upon counsel for the Debtor, otherwise such Holder's Administrative Claim will be forever barred and extinguished and such Holder shall, with respect to any such Administrative Claim, be entitled to no distribution and no further notices. The Debtor shall pay pre-confirmation quarterly U.S. Trustee fees in full in Cash within thirty (30) days after the Effective Date. U.S. Trustee fees which accrue after confirmation shall be paid by the Reorganized Debtor.

3.2     Payment of Administrative Claims. Each Holder of an unpaid Allowed Administrative Claim shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Administrative Claim, unless the Holder of such Claim agrees to a different treatment.

3.3     Payment of Non-Tax Priority Claims. Each Holder of an unpaid Allowed Non-Tax Priority Claim shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Non-Tax Priority Claim, unless the Holder of such Claim agrees to a different treatment.

3.4     Payment of Unsecured Priority Tax Claims. The Allowed Priority Tax Claims shall be paid beginning December 31, 2009, and continuing for a period of twelve (12) quarters, the sum of $11,278, per quarter until such Claims are paid in full. Such deferred cash payments shall have a value as of the Effective Date the Plan, equal to the allowed amount of such Claims. In computing the present value of such Claims, the interest rate applied shall be the interest rate, which is currently 4.25%, as determined by Texas Tax Code Section 110.060(b) from the Effective Date until paid.

## ARTICLE 4
### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Plan provides for the division of Claims and Interests into Classes. Subject to all other applicable provisions of the Plan (including its distribution provisions), classified Claims and Interests shall receive the treatment set forth below. The Plan will not provide any

distributions on account of a Claim or Interest to the extent that such Claim or Interest has been Disallowed, released, withdrawn, waived, settled, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third party guarantors, sureties, or insurers, whether governmental or nongovernmental.  The Plan will not provide any distributions on account of a Claim or Interest, the payment of which has been assumed by a third party.

**Claims and Interests**

4.1     Class 1.     <u>Allowed Secured Claim of Taxing Authorities</u>.

    4.1.1     <u>Classification.</u>  Class 1 consists of the Allowed Secured Claims of Ad Valorem taxing authorities for the years 2004 through 2008 secured by a first lien on all of the Debtor's assets.

    4.1.2     <u>Treatment.</u>    The Allowed Secured Class 1 Claims shall be paid beginning December 31, 2009, and continuing for a period of twelve (12) quarters, the sum of $7,414, per quarter until the Class 1 Allowed Secured Claims are paid in full.  Such deferred cash payments shall have a value as of the Effective Date the Plan, equal to the allowed amount of such Claims. In computing the present value of such Claims, the interest rate applied shall be the interest rate, which is currently 12%, as determined by Texas Tax Code Section 33.01 from the Effective Date until paid. The Allowed Secured Class 1 Claims Holders shall retain their liens until such time as they are paid in full.

    4.1.3     <u>Impairment.</u> The Class 1 Claims are unimpaired.

4.2     Class 2.     <u>Allowed Secured Claims of Aegis and CenturyTel</u>.

    4.2.1     <u>Classification.</u>   Class 2 consists of the Allowed Secured Claims of Aegis and CenturyTel secured by substantially all of the Debtor's assets.  There is currently a dispute between CenturyTel and Aegis as to the extent, validity and priority of their respective liens. The Debtor believes that the going concern value of the collateral is $1.7 million.  The payment stream described in Treatment Alternative A below will be held in the Disputed Claim Reserve provided for in Article 7 pending a determination by the Court with respect to the dispute.

    4.2.2     <u>Treatment Alternative A.</u>   The Allowed Secured Class 2 Claims shall be paid beginning December 31, 2009, and continuing for a period of twelve (12) quarters, principal plus interest in the amount shown below:

| Date | Principal | Interest |
|------|-----------|----------|
| Dec 31, 2009 | $50,000 | $18,063 |
| Mar 31, 2010 | $50,000 | $17,531 |
| June 30, 2010 | $50,000 | $17,000 |

9

| | | |
|---|---|---|
| Sep 30, 2010 | $50,000 | $16,469 |
| Dec 31, 2010 | $75,000 | $15,938 |
| Mar 31, 2011 | $75,000 | $15,141 |
| June 30, 2011 | $200,000 | $14,344 |
| Sep 30, 2011 | $200,000 | $12,219 |
| Dec 31, 2011 | $200,000 | $10,094 |
| Mar 31, 2012 | $250,000 | $ 7,969 |
| Apr 31, 2012 | $250,000 | $ 5,313 |
| June 30, 2012 | $250,000 | $ 2,656 |
| Total | $1,700,000 | |

Such deferred cash payments shall have a value as of the Effective Date the Plan, equal to the allowed amount of such Claims. In computing the present value of such Claims, the interest rate applied shall be 4.25% which is prime plus one. The Allowed Secured Class 2 Claims Holders shall retain their liens until such time as they are paid in full.

4.2.3     Impairment.   The Class 2 Claims are impaired under Treatment Alternative A.

4.2.4     Treatment Alternative B.   The Allowed Secured Class 2 Claims shall be paid the sum of $800,000 to be divided between Aegis and CenturyTel as they agree in full satisfaction of their Allowed Secured Claims and their liens shall be released. The balance of their Claims shall be treated as General Unsecured Claims.

4.2.5     Impairment.   The Class 2 Claims are impaired under Treatment Alternative B.

4.3    Class 3.    Allowed Secured and Unsecured Claims of Balaton.

4.3.1     Classification.   Class 3 consists of the Allowed Secured and Unsecured pre and post petition Claims held by Balaton.

4.3.2     Treatment. In exchange for all of its Allowed Secured and Unsecured pre and post petition Claims, Balaton shall receive 100% of the newly issued stock of the Reorganized Debtor as provided for in section 6.6hereof, free and clear of the liens, claims, interests, and encumbrances of any Claim of Creditor or Equity Interests.

4.3.3     Impairment. The Class 3 Claims are impaired.

4.4    Class 4.    Allowed General Unsecured Claims.

4.4.1     Classification.   Class 4 consists of the Allowed General Unsecured Claims which are not held by Insiders.

10

4.4.2     Treatment. The Holders of Allowed Class 4 Claims will receive their Pro Rata share of $300,000 payable in twelve equal quarterly installments with no interest commencing December 31, 2009. They will also receive Net Proceeds from Avoidance Actions.

4.4.3     Impairment. The Class 4 Claims are impaired.

4.5    Class 5.    Allowed Interests of Equity Holders.

4.5.1     Classification. Class 5 consists of the Allowed Equity Interests in the Debtor.

4.5.2     Treatment Holders of Equity Interests shall receive no distribution or any property under the Plan on account of said Equity Interests, said Equity Interests shall be cancelled, and new common stock in the Reorganized Debtor shall be issued to Balaton, as otherwise provided for in the Plan.

4.5.3     Impairment. Class 5 is impaired under the Plan.

**ARTICLE 5**
**VOTING OF CLAIMS AND INTERESTS**

5.1     Classes 2, 3 and 4 of Claims are impaired and therefore are entitled to vote on this Plan. Class 1 is unimpaired and not entitled to vote. Accordingly, the acceptances of Class 2, 3 and 4 Claims must be solicited. With respect to Holders of Class 2 Claims, Alternative B is only applicable if all Holders of Allowed Class 2 Claims elect Alternative B.

5.2     The Class of Equity Interests is receiving nothing so it is deemed to have rejected the Plan.

**ARTICLE 6**
**MEANS FOR EXECUTION OF PLAN**

6.1     Vesting of Property of the Estate in Reorganized Debtor. On the Effective Date of the Plan, all property of the Debtor and of the Estate shall vest in the Reorganized Debtor free and clear of liens, claims and encumbrances, except as otherwise provided in the provisions of this Plan.

6.2     Continuation of Business Operations. From and after the Effective Date of the Plan, the Reorganized Debtor is authorized to continue its normal business operations and enter into such transactions as it deems advisable, free of any restriction or limitation imposed under any provision of the Bankruptcy Code, except to the extent otherwise provided in the Plan. The cash flow of the operations shall be used to fund payments required by the Plan.

6.3     Merger. The Debtor is a wholly owned subsidiary of SkyComm. The only asset of SkyComm is the Debtor and the only liability of SkyComm is to CenturyTel. SkyComm is a

11

Delaware corporation. Pursuant to Delaware law, SkyComm (the parent company) will merge into the Debtor (the wholly owned subsidiary). The merger will be accomplished by the vote of Balaton as shareholder of SkyComm. Once merged, the Debtor's equity interests (formerly SkyComm's equity holders) will be cancelled and shares of the Reorganized Debtor re-issued in exchange for the Claims of Balaton.

6.4    Directors and Officers of Reorganized Debtor. The Directors and Officers of the Debtor are authorized to continue as Directors and Officers of the Reorganized Debtor from and after the Effective Date of the Plan.

6.5    Source of funds for Payments due on the Effective Date. The current operational revenues of SkyPort and collection of receivables will be used to pay Administrative and Non-Tax Priority Claims as required by the Plan. To the extent that SkyPort lacks sufficient funds to make the payments the Debtor anticipates will be required to effectuate the Plan, Balaton will advance the funds necessary to ensure that the payments due on the Effective Date anticipated by the Debtor are timely paid.

6.6    New Common Stock. The Reorganized Debtor will issue shares of new common stock to Balaton in full satisfaction of all of its pre-petition and post-petition Claims, which issuance will represent no less than 50% of the Reorganized Debtor's common stock.

6.7    Restated Articles of Incorporation and Bylaws. At the Debtor's option, the Debtor's Bylaws and Articles of incorporation may be modified to prohibit the issuance of non-voting equity security to the extent required by Code § 1123(a)(6) and such other modifications as may be approved in the Confirmation Order ("Restated Articles of Incorporation" and "Restated By-Laws").

6.8    Disbursing Agent. The Reorganized Debtor shall act as the Disbursing Agent. If the Reorganized Debtor chooses not to act as the Disbursing Agent, then it shall designate a substitute.

6.9    Exclusive Rights and Duties of the Disbursing Agent. The duties of the Disbursing Agent shall be as follows:

6.9.1    Distribution to Creditors with Administrative Claims. In accordance with Article 3 the Disbursing Agent shall pay the Administrative and Priority Claims first out of Cash on hand generated from operations.

6.9.2    Distributions to Creditors with Allowed Claims. The Disbursing Agent shall have the sole right and duty to make the distributions provided for hereunder as set forth in Article 4.

6.10    Powers of the Disbursing Agent. The Disbursing Agent shall have full power and authority to do the following.

6.10.1    The Disbursing Agent shall be authorized to make disbursements to Administrative and Priority Creditors in accordance with Article 3 and other Creditors in accordance with Article 4.

12

6.10.2    The Disbursing Agent shall be authorized to file all reports required under law, including state and federal tax returns, and to pay all taxes incurred by the Bankruptcy Estate.

6.10.3    The Disbursing Agent shall be authorized to take any and all actions, including the filing or defense of any civil actions or Claim objections necessary to accomplish the above.

6.10.4    The Disbursing Agent shall be authorized to employ and pay reasonable fees and expenses of such attorneys, accountants, and other professionals, as may be deemed necessary to accomplish the above and shall be entitled to reserve sufficient Cash to pay the projected fees and costs to such Professionals on a post-confirmation basis, and shall be authorized to purchase insurance with such coverage and limits as are reasonably necessary, including covering liabilities incurred in connection with its service as Disbursing Agent.

6.10.5    The Disbursing Agent may suspend distribution to any Creditor that has not provided the Disbursing Agent with its Federal Tax Identification number or social security number, as the case may be.

6.11    Presumption of Disbursing Agent's Authority. In no case shall any party dealing with the Disbursing Agent in any manner whatsoever be obligated to see that the terms of its engagement have been complied with, or be obligated or privileged to inquire into the necessity or expediency of any act of the Disbursing Agent, or to inquire into any other limitation or restriction of the power and authority of the Disbursing Agent, but as to any party dealing with the Disbursing Agent in any manner whatsoever in relation to the assets, the power of the Disbursing Agent to act or otherwise deal with said property shall be absolute except as provided under the terms of the Plan.

6.12    Limitation on Disbursing Agent's Liability.

6.12.1    Except gross negligence or willful misconduct, no recourse shall ever be had directly or indirectly against the Disbursing Agent personally or against any employee of the Disbursing Agent by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Disbursing Agent pursuant to this Plan, or by reason of the creation of any indebtedness by the Disbursing Agent for any purpose authorized by the Plan, it being expressly understood and agreed that all such liabilities, covenants and agreements of the Disbursing Agent or any such employee, whether in writing or otherwise shall be enforceable only against and be satisfied only out of the assets of the Bankruptcy Estate and every undertaking, contract, covenant or agreement entered into in writing by the Disbursing Agent shall provide expressly against the personal liability of the Disbursing Agent.

13

6.12.2     The Disbursing Agent shall not be liable for any act the Disbursing Agent may do or omit to do as Disbursing Agent hereunder while acting in good faith and in the exercise of the best judgment of the Disbursing Agent and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for the Disbursing Agent, shall be evidence of such good faith and best judgment; nor shall the Disbursing Agent be liable in any event except for gross negligence or willful default or misconduct of the Disbursing Agent.

6.13   Establishment and Maintenance of Disputed Claims Reserve:

6.13.1     Distributions made in respect of any Disputed Claims shall not be distributed, but shall instead be deposited by the Disbursing Agent into an interest-bearing account styled "Disputed Claims Reserve". The funds in this account shall be held in trust for the benefit of the Holders of all Disputed Claims.

6.13.2     Unless and until the Bankruptcy Court shall determine that a good and sufficient reserve for any Disputed Claim is less than the full amount thereof, the calculations required by the Plan to determine the amount of the distributions due to the Holders of Allowed Claims and to be reserved for Disputed Claims shall be made as if all Disputed Claims were Allowed Claims in the full amount claimed by the Holders thereof. No payment or distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

6.13.3     At such time as a Disputed Claim becomes an Allowed Claim the distributions due on account of such Allowed Claim and accumulated by the Debtor (including the Pro Rata share of any dividends or interest earned in respect of such distributions) shall be released from the account and paid by the Debtor to the Holder of such Allowed Claim.

6.13.4     At such time as any Disputed Claim is finally determined not to be an Allowed Claim, the amount on reserve in respect thereof shall be released from the account and returned to Debtor.

6.13.5     The Disbursing Agent shall not be required to withhold funds or consideration, designate reserves, or make other provisions for the payment of any Claims that have been Disallowed by a Final Order of the Bankruptcy Court as of any applicable time for distribution under the Plan, unless the Bankruptcy Court orders otherwise or unless the Court's order of disallowance has been stayed.

14

6.14   Delivery of Distributions. Subject to Bankruptcy Rule 9010 and the provisions of the Plan, distributions to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such a Holder if no proof of Claim or proof of Equity Interest is filed or if the Disbursing Agent has been notified in writing of a change of address), except as provided below. If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Disbursing Agent is notified of such Holder's then current address, at which time all missed distributions shall be made to such Holder without interest. Amounts in respect of undeliverable distributions shall be returned to the Disbursing Agent until such distributions are claimed.

6.15   Time Bar for Cash Payments. Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within six months after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Disbursing Agent by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before the later of (a) the first anniversary of the Effective Date or (b) ninety (90) days after the date of reissuance of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred.

6.16   Unclaimed Property. If any Person entitled to receive distributions under the Plan cannot be located within a reasonable period of time after the Effective Date, the distributions such Person would be entitled to receive shall be held by the Disbursing Agent in a segregated interest-bearing account. If the Person entitled to any such distributions is located within six months after the Effective Date, such distributions, together with any dividends and interest earned thereon, shall be paid and distributed to such Person. If such Person cannot be located within such period, such distributions and any dividends and interest thereof shall be returned to the respective Debtor and such Person shall have waived and forfeited his right to such distributions. Nothing contained in this Plan shall require the Debtor or the Disbursing Agent to attempt to locate such Person. It is the obligation of each Person claiming rights under the Plan to keep the Debtor and/or the Disbursing Agent advised of current address by sending written notice of any changes to the Debtor and/or the Disbursing Agent.

6.17   Fractional Dollars. Any other provision of the Plan notwithstanding, no payments of fractional dollars will be made to any Holder of an Allowed Claim. Whenever any payment of a fraction of a dollar to any holder of an Allowed Claim would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest whole dollar (up or down).

6.18   Minimum Payment. The minimum amount of any distribution shall be $25. If a payment is due in an amount less than $25, then such payments is hereby waived and the funds shall be retained by the Reorganized Debtor.

6.19   Distribution Dates. Whenever any distribution to be made under the Plan is due on a day other than a Business Day, such distribution will instead be made, without penalty or interest, on the next Business Day. The Bankruptcy Court shall retain power, after the

Confirmation Date, to extend distribution dates for cause, upon motion and after notice and a hearing (as defined in Bankruptcy Code Section 102) to affected parties.

6.20 <u>Orders Respecting Claims Distribution</u>. After confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction to enter orders in aid of consummation of the Plan respecting distributions under the Plan and to resolve any disputes concerning distributions under the Plan.

6.21 <u>Avoidance Actions</u>. The Reorganized Debtor retains any Avoidance Actions and is authorized, but not required, to prosecute them after the Confirmation Date. The Net Proceeds of Avoidance Actions will be distributed to Holders of Allowed Class 4 Claims (as set forth above), but compromises of Avoidance Actions may also benefit the Reorganized Debtor or Debtor or Holders of Claims of other Classes;

6.22 <u>Agreements, Instruments and Documents</u>. All agreements, instruments and documents required under the Plan to be executed or implemented, together with such others as may be necessary, useful, or appropriate in order to effectuate the Plan shall be executed on or before the Effective Date or as soon thereafter as is practicable.

6.23 <u>Further Authorization</u>. The Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings from the Bankruptcy Court, in addition to those specifically listed in the Plan, as may be necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan. The Bankruptcy Court shall retain jurisdiction to enter such orders, judgments, injunctions and rulings.

**ARTICLE 7**
<u>CRAMDOWN AND CLAIMS ALLOWANCE</u>

7.1 In the event any Class rejects the Plan, the Debtor will seek to invoke the provisions of Section 1129(b) of the Bankruptcy Code and confirm the Plan notwithstanding the rejection of the Plan by any Class of Claims or Interests.

**IN THE EVENT ANY CLASS REJECTS THE PLAN THE DEBTOR WILL SEEK TO INVOKE THE PROVISIONS OF 11 U.S.C. §1129(b) AND CONFIRM THE PLAN OVER THE REJECTION OF THE CLASS OR CLASSES. THE TREATMENT AFFORDED EACH CREDITOR IN EACH CLASS IN THE EVENT OF A CRAMDOWN WILL BE THE SAME AS THAT PROVIDED FOR IN THE PLAN AS THE CASE MAY BE.**

7.2 <u>Allowance of Claims under the Plan</u>. Allowance is a procedure whereby the Bankruptcy Court determines the amount and enforceability of Claims against the Debtor, if the parties cannot agree upon such allowance. It is expected that the Debtor and/or the Disbursing Agent will file objections to Claims of Creditors, if any are deemed necessary, before and after confirmation of the Plan. The Plan merely provides for payment of Allowed Claims, but does not attempt to pre-approve the allowance of any Claims.

7.3    Objection Deadline.  As soon as practicable, but in no event later than one hundred eighty (180) days after the Effective Date, unless extended by order of the Bankruptcy Court for cause, objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made.

7.4    Prosecution of Objections.  On and after the Effective Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement or withdrawal of all objections to Claim may be made by the Debtor and/or Disbursing Agents.

## ARTICLE 8
## DEFAULT

8.1    If any of the following events occur, the Debtor will be in breach of this Plan ("Default"):

8.1.1    Failure to pay any amount due under the Plan when due; or

8.1.2    Breach or violation of a material covenant or uncured default under the Plan, including failure to pay amounts due.

8.2    Should the Debtor be in breach or violation under the foregoing paragraph, or Default has occurred and thereafter the Debtor fails to remedy or resolve such breach within thirty (30) days from the date of receipt of written notice of such breach, violation or default, then any Creditor owed a distribution, which the Debtor fails to make when due, at its option, may declare that the Debtor is in default of this Plan.

## ARTICLE 9
## EXECUTORY CONTRACTS AND LEASES

9.1    The Debtor hereby assumes the executory contracts and leases set forth in Exhibit A.  The Debtor also assumes all contracts with customers whereby the Debtor provides satellite service.  Software licenses (which may or may not be executory contracts) are assumed and all known software licenses are listed on Exhibit "A".  All licenses issued to the Debtor by governmental authorities are assumed.

9.2    The Debtor hereby rejects all executory contracts and leases listed as "reject" in Exhibit A.  .

9.3    Any Claims arising from rejection of an executory contract or lease must be filed on or before 20 days from the Effective Date.  Otherwise, such Claims are forever barred and will not be entitled to share in any distribution under the Plan.  Any Claims arising from rejection, if timely filed and allowed, will be paid as General Unsecured Claims.

9.4    The Debtor shall pay all cure claims in the amount listed on Exhibit A on or before 30 days after the Administrative Claims Bar Date set in paragraph 3.1, unless a Claim is filed before the Administrative Claims Bar Date in an amount different from that set forth on Exhibit A, in which case the cure claim will be paid when and if allowed by Final Order of the Bankruptcy Court.

17

## ARTICLE 10
## MODIFICATION OF THE PLAN

10.1    The Debtor may propose amendments and modifications of this Plan through the Confirmation Date with leave of the Bankruptcy Court upon appropriate notice.  After the Confirmation Date, the Debtor may, with approval of the Bankruptcy Court, so long as it does not materially and adversely affect the interests of the Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the intent of this Plan.  After the Confirmation Date, the Debtor may, with approval of the Bankruptcy Court, modify the Plan as to any Class, even though such modification materially affects the rights of the Creditors or Interest Holders in such Class; provided, however, that such modifications must be accepted as to Classes of Creditors by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Claims voting in each such Class and fifty-one percent (51%) in number of Allowed Claims voting in such Class, and as to Classes of Interest Holders by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Interests voting in each such Class; and provided, further, that additional disclosure material needed to support such modification shall be approved by the Bankruptcy Court in the manner consistent with Section 1125 of the Bankruptcy Code and Rule 3017 of the Federal Rules of Bankruptcy Procedure.  With respect to all proposed modifications to the Plan both before and after confirmation, the Debtor shall comply with the requirements of Section 1127 of the Bankruptcy Code.

## ARTICLE 11
## CONDITIONS PRECEDENT

11.1    Conditions to Confirmation.  Confirmation of the Plan shall not occur and the Bankruptcy Court shall not enter the Confirmation Order unless all of the requirements of the Bankruptcy Code for confirmation of the Plan with respect to the Debtor shall have been satisfied.  In addition, confirmation shall not occur, the Plan shall be null and void and of no force and effect, and the Plan shall be deemed withdrawn unless the Court shall have entered all orders (which may be orders included within the Confirmation Order) required to implement the Plan.

11.2    Waiver and Nonfulfillment of Conditions to Confirmation.  Nonfulfillment of any condition to confirmation of the Plan may be waived only by the Debtor.  In the event the Debtor determines that the conditions to the Plan's confirmation which they may waive cannot be satisfied and should not, in their discretion, be waived, the Debtor may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

11.3    Confirmation Order Provisions for Pre-Effective Date Actions.  The Confirmation Order shall empower and authorize the Debtor to take or cause to be taken, prior to the Effective Date, all actions which are necessary to enable it to implement the provisions of the Plan and satisfy all other conditions precedent to the effectiveness of the Plan.

18

11.4   <u>Conditions to the Effective Date</u>.  The following are conditions precedent to the effectiveness of the Plan: (i) the Plan is confirmed and the Bankruptcy Court shall have entered the Confirmation Order, which shall have become a Final Order; (ii) Debtor does not withdraw the Plan at any time prior to the Effective Date; and (iii) the Debtor shall have sufficient Cash on hand to make the initial payments and distributions required under the Plan.

11.5   <u>Waiver and Nonfulfillment of Conditions to Effective Date</u>.  Nonfulfillment of any condition set forth in the immediately foregoing paragraph of the Plan may be waived only by the Debtor.  In the event that the Debtor determines that the conditions to the Plan's Effective Date set forth in the immediately foregoing paragraph of this Plan cannot be satisfied and should not, in their sole discretion, be waived, the Debtor may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

## ARTICLE 12
## JURISDICTION OF THE BANKRUPTCY COURT

12.1   Notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Bankruptcy Court shall retain exclusive jurisdiction of this case after the Confirmation Date with respect to the following matters:

12.1.1   To allow, disallow, reconsider (subject to Bankruptcy Code Section 502(j) and the applicable Bankruptcy Rules) Claims and to hear and determine any controversies pertaining thereto;

12.1.2   To estimate, liquidate, classify or determine any Claim against the Debtor, including claims for compensation or reimbursement;

12.1.3   To resolve controversies and disputes regarding the interpretation and implementation of the Plan, including entering orders to aid, interpret or enforce the Plan and to protect the Debtor and any other entity having rights under the Plan as may be necessary to implement the Plan;

12.1.4   To hear and determine any and all applications, contested matters, or adversary proceedings arising out of or related to this Plan or this case or as otherwise might be maintainable under the applicable jurisdictional scheme of the Bankruptcy Code prior to or after confirmation and consummation of the Plan whether or not pending on the Confirmation Date;

12.1.5   To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

12.1.6   To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

12.1.7 To adjudicate all Claims to any lien on any of the Debtor's assets;

12.1.8 To hear and determine matters concerning state, local and federal taxes pursuant to the Bankruptcy Code, including (but not limited to) sections 346, 505 and 1146 thereof and to enter any order pursuant to Bankruptcy Code Section 505 or otherwise to determine any tax of the Debtor, whether before or after confirmation, including to determine any and all tax effects of the Plan;

;

12.1.9 To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan or to modify the Plan as provided by applicable law;

12.1.10 To determine all questions and disputes regarding title to assets and shares of the Debtor, Reorganized Debtor or of the Bankruptcy Estate, as may be necessary to implement the Plan;

12.1.11 To enforce and to determine actions and disputes concerning the releases contemplated by the Plan and to require persons holding Claims being released to release Claims in compliance with the Plan;

12.1.12 To fix the value of collateral in connection with determining Claims;

12.1.13 To enter a final decree closing the case and making such final administrative provisions for the case as may be necessary or appropriate.

12.1.14 To, (even after entry of a final decree), hear any cases enforcing Bankruptcy Code section 525.

12.2 <u>Failure of the Bankruptcy Court to Exercise Jurisdiction</u>. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under or related to the Chapter 11 case, including the matters set forth in Section 12.1 of the Plan, this Article 12 shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

**ARTICLE 13**
**EFFECT OF CONFIRMATION**

13.1 <u>Binding Effect</u>. As provided for in Section 1141(d) of the Bankruptcy Code, the provisions of the Plan shall bind the Debtor, any entity acquiring property under the Plan and any Creditor, Equity Holder of the Debtor, whether or not the Claim or Interest of such Creditor or Equity Holder is impaired under the Plan and whether or not such Creditor or Equity Holder has accepted the Plan, and the United States and any licensing authority. After confirmation, the

property dealt with by the Plan shall be free and clear of all Claims and Interests of Creditors and Equity Holders, except to the extent as provided for in the Plan as the case may be. The Confirmation Order shall contain an appropriate provision to effectuate the terms of this paragraph 13.1.

13.2    Satisfaction of Claims and Interests. Holders of Claims and Interests shall receive the distributions provided for in this Plan, if any, in full settlement and satisfaction of all such Claims, and any interest accrued thereon, and all such Interests.

13.3    Vesting of Property. Except as otherwise expressly provided in the Plan or the Confirmation Order, pursuant to Section 1141(b) of the Bankruptcy Code, upon the Effective Date, all Property of the Bankruptcy Estate shall vest in the Debtor free and clear of all Claims, liens, encumbrances, charges or other Interests of Creditors and Interest Holders. Except as otherwise expressly provided in the Plan or the Confirmation Order, all assets of the SkyPort Bankruptcy Estate shall vest in the Reorganized Debtor free and clear of all Claims, liens, and encumbrances. Moreover, all licenses and permits held by the Debtor shall be held by the Reorganized Debtor. All FCC licenses (including broadcast licenses) held by the Debtor, its former parent or the Bankruptcy Estate will be retained by the Reorganized Debtor.

13.4    Discharge. Pursuant to Section 1141(d) of the Bankruptcy Code, upon the Effective Date, the Debtor shall be discharged from any debt that arose before the date of such confirmation, and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of the Claim based on such debt is filed or deemed filed under Section 501 of this title; such Claim is allowed under Section 502 of this title; or the Holder of such Claim has accepted the Plan.

13.5    **Injunction. The Confirmation Order shall include a permanent injunction prohibiting the collection of Claims in any manner other than as provided for in the Plan. All Holders of Claims shall be prohibited from asserting against the Debtor, Reorganized Debtor, Balaton or Insider Released Parties (defined *infra*) or any of their assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such Holder filed a proof of Claim. Such prohibition shall apply whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the Holder of a Claim based upon such debt has accepted the Plan. This injunction also permits the Reorganized Debtor to enforce 11 U.S.C. §525(a) upon improper revocation or restriction of licenses.**

13.6    Preservation of Setoff Rights. In the event that the Debtor has a Claim of any nature whatsoever against the Holders of Claims, the Debtor may, but is not required to setoff against the Claim (and any payments or other distributions to be made in respect of such Claim hereunder), subject to the provisions of Section 553 of the Bankruptcy Code. Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor of any Claim that the Debtors has against the Holder of Claims. Neither this provision nor the injunctive provision of the Confirmation Order shall impair the existence of any right of setoff or recoupment that may be held by a Creditor herein; provided that the exercise of such

21

right shall not be permitted unless the Creditor provides the Debtor with written notice of the intent to affect such setoff or recoupment. If the Debtor or the Disbursing Agent, as applicable, objects in writing within twenty (20) business days following the receipt of such notice, such exercise shall only be allowed upon order of the Bankruptcy Court. In the absence of timely objection, the Creditor may implement the proposed setoff or recoupment against the Claim held by the Bankruptcy Estate.

13.7    **Releases.** **On the Effective Date and pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code, the Debtor, and to the maximum extent provided by law, its agents, release and forever discharge all claims, including acts taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into or any other act taken or entitled to be taken in connection with the Plan or this case against the following, whether known or unknown:**

      13.7.1    **Robert Kubbernus and Balaton Group, Inc. ("Insider Released Parties"), in connection with any and all claims and causes of action arising on or before the Confirmation Date that may be asserted by or on behalf of the Debtor or the Bankruptcy Estate and/or on account of the Debtor's Case.**

      13.7.2    **The release of these Insider Released Parties shall be conditioned upon the occurrence of the Effective Date.**

      13.7.3    **The Debtor's Professionals will be released from any and all claims and liabilities other than willful misconduct or except the releases is otherwise restricted by the Texas Disciplinary Rules of Professional Conduct.**

13.8    **Exculpation.** **Neither the Debtor, the Insider Released Parties, nor any of their respective present members, officers, directors, or employees shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission (specifically including negligence and gross negligence) in connection with, relating to, or arising out of the Chapter 11 Case, the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions not otherwise released and which are the result of fraud or willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.**

13.9    Lawsuits. On the Effective Date, all lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of Claims against the Debtor except proof of Claim and/or objections thereto pending in the Bankruptcy

Court shall be dismissed as to the Debtor. Such dismissal shall be with prejudice to the assertion of such Claim in any manner other than as prescribed by the Plan. **All parties to any such action shall be enjoined by the Bankruptcy Court by the Confirmation Order from taking any action to impede the immediate and unconditional dismissal of such actions.** All lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of a claim(s) by the Debtor or any entity proceeding in the name of or for the benefit of the Debtor against a person shall remain in place only with respect to the claim(s) asserted by the Debtor or such other entity, and shall become property of the Post-Confirmation Debtor to prosecute, settle or dismiss as it sees fit.

13.10 Insurance. Confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtor or Reorganized Debtor in which the Debtor or any of the Debtor's representatives or agents is or was the insured party; the Reorganized Debtor shall become the insured party under any such policies without the need of further documentation other than the Plan and entry of the Confirmation Order. Each insurance company is prohibited from denying, refusing, altering or delaying coverage on any basis regarding or related to the Debtor's bankruptcy, the Plan or any provision within the Plan.

13.11 U.S. Trustee Fees. The Debtor shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismisses the case. After confirmation, the Debtor shall file with the Bankruptcy Court and shall transmit to the United States Trustee a true and correct statement of all disbursements made by the Debtor for each month or portion thereof, that this Chapter 11 case remains open in a format prescribed by the United States Trustee.

13.12 Term of Stays. Except as otherwise provided in the Plan, the stay provided for in this case pursuant to Bankruptcy Code Section 362 shall remain in full force and effect until the Effective Date.

## ARTICLE 14
### MISCELLANEOUS PROVISIONS

14.1 Corporate Authority. All actions and transactions contemplated under the Plan shall be authorized upon confirmation of the Plan without the need of further board or stockholder resolutions, approval, notice or meetings, other than the notice provided by serving this Plan on all known Creditors of the Debtor, all Interest Holders, and all current directors of the Debtor.

14.2 Documentation. The Debtor, all Creditors and other parties in interest required to execute releases, termination statements, deeds, bills of sale or other documents required by the Plan, shall be ordered and directed to execute such documents as are necessary in order to effectuate the terms of this Plan. The Bankruptcy Court may determine that the failure of any party to execute a required document shall constitute contempt of the Bankruptcy Court's Confirmation Order, which shall require such documents to be executed in accordance with the

terms of the Plan and the Confirmation Order.  On the Effective Date, all documents and instruments contemplated by the Plan not requiring execution and delivery prior to the Confirmation Date shall be executed and delivered by the Debtor, and Creditors, as the case may be.  All Documents shall be consistent with the terms of the Plan and shall otherwise be subject to approval as to form by all respective counsel.

14.3    Integration Clause.  This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtor, Creditors, Equity Interests and the parties-in-interest upon the matters herein. Parol evidence shall not be admissible in an action regarding this Plan or any of its provisions.

14.4    Primacy of the Plan and Confirmation Order.  To the extent of any conflict or inconsistency between the provisions of the Plan on the one hand, and the Confirmation Order on the other hand, the provisions of the Confirmation Order shall govern and control.

14.5    Severability.  Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest or transaction, the proponent may modify the Plan in accordance with Article 11 hereof so that such provision shall not be applicable to the Holder of any Claim or Equity Interest.  Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

14.6    No Admission.  Neither the filing of the Plan, nor Disclosure Statement, nor any statement or provision contained herein, nor the taking by the Debtor of any action with respect to the Plan shall (i) be or be deemed to be an admission against interest and (ii) until the Effective Date, be or be deemed to be a waiver of any rights which the Debtor may possess against any other party.  In the event that the Effective Date does not occur, neither the Plan, Disclosure Statement nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the Debtor's case.

14.7    Bankruptcy Restrictions.  From and after the Effective Date, the Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code or Rules (e.g., section 363, section 364, rule 9019), the Bankruptcy Court, or the United States Trustee's guidelines.  The Disbursing Agents may, on behalf of the Debtor, compromise Claims and/or controversies post-Effective Date without the need of notice or Bankruptcy Court approval.  No monthly operating reports will be filed after the Effective Date; however, the Disbursing Agents shall provide the U.S. Trustee such financial reports as provided above and as the U.S. Trustee may reasonably request until the entry of a final decree.

14.8    Governing Law.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or the law of the jurisdiction of organization of any entity, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan or the Chapter 11 case, including the documents executed pursuant to the Plan.

24

14.9    Closing of Case.  As soon as the Debtor has performed its obligations under the Plan it shall seek the entry of an Order of the Court closing the case.

14.10   Successors and Assigns.  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

14.11   Notices.  All notices or requests in connection with the Plan shall be in writing and given by mail addressed to:

with copies to:

> Edward L. Rothberg
> Weycer, Kaplan, Pulaski & Zuber, PC
> 11 Greenway Plaza, Suite 1400
> Houston, Texas  77046

All notices and requests to Persons holding any Claim or Interest in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in the case.  Any such holder of Claim or Interest may designate in writing any other address for purposes of this section, which designation will be effective upon receipt by the Debtor.

14.12   Validity and Enforceability.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.  Should any provision in this Plan be determined by the Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

Respectfully submitted this _22nd_ day of May, 2009.

SKYPORT GLOBAL COMMUNICATIONS, INC

By:____ /s/ R. K. by permission HMR
         Robert Kubbernus, CEO

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
EDWARD L. ROTHBERG
Texas Bar No. 17313990
HUGH M. RAY, III
Texas Bar No. 24004246
11 Greenway Plaza, Suite 1400
Houston, Texas 77046
713-961-9045
713-961-5341 (fax)

Attorneys for Debtor

**SkyPort** Global Communications

EXHIBIT A TO PLAN (AMENDED)

| Name | Description | Cure Amount | Disposition |
|---|---|---|---|
| **ease Agreements** | | | |
| Farnam Street Financial | Equipment Lease | | Reject Lease (prior compromise) |
| Sunrise Campus Investors, LLC | Lease of Reston Office Space | | Reject Lease |
| Ellington Lease with City of Houston | Lease of Land for TelePort | 16,741.09 | Assume |
| Cisco Capital Lease | Old 2003 - 2006 Equipment Lease | | Reject Lease |
| Klabzuba Properties | Lease of Office space vacated in 2007 - They have sued SkyPort | | Reject Lease |
| | | | |
| **endor Agreements** | | | |
| AboveNet Communications | Terrestrial Circuit Services - Old | | Reject |
| Advanced Projects International | Engineering & TelePort management | | Reject |
| ADP Totalsource | Employee Leasing & Payroll Services | | Accept |
| Advance Business Copiers | Maintenance Agreement for Copier | | Reject |
| Alpheus Master Service Agreement | Terrestrial Circuit Services | 30,569.72 | Assume *** |
| CT Corporation | Registered Agent | 780.00 | Assume |
| GSI Globecomm | Satellite Bandwidth | | Reject |
| Hunter Communications | Satellite Bandwidth (Intelsat 1002) | | Assume |
| iDirect - support Agreement | Support Agreement on Equipment | - | Reject |
| Initial Tropical | Plant Rental | | Reject |
| Insurance - AICCO, Inc | Insurance | | Reject |
| IntelSat Contracts | Satellite Bandwidth | - | Assume |
| Intrado Agreement for Services | 911 Services | | Reject |
| Johnson Controls | Monitoring of Facilities | | Reject |
| Lyman Brothers | Satellite Bandwidth | | Reject |
| MediSat Contract for Sat Uplink | TelePort Services | | Reject |
| Mobile Mini Texas | Monthly Rental of Storage Container | | Reject |
| Oaldawn Partners | Consulting Agreement | - | Assume |
| PaeTec | Telephone Services | | Reject |
| Pitney Bowes | Postage Meter Rental - Can end anytime | | Assume |
| SES Americon | Satellite Bandwidth | 5,056.45 | Assume |
| SES New Skies | Satellite Bandwidth | | Reject |
| Stratove LTD | Consulting Agreement - signed post-petition | - | Assume |
| The Space Connections | Satellite Bandwidth | | Reject |
| USA Net | Email exchange Server - Month to Month | 1,365.45 | Assume |
| Verizon Business Services | Terrestrial Circuit Services | | Reject |
| Verizon Wireless | Cell Phones - Signed new contract post-petition | | Reject Old Agreement |
| XO Master Service Agreement | Telephone Services | | Reject |
| | | | |
| **ustomer Contracts** | | | |
| All customer contracts not seperately listed | | | Assume |
| Hunter Communications - Contract # 2008477 | | | Reject |
| Hunter Communications - Contract # 12008516 | | | Reject |
| Hunter Communications - Contract # 200709003 | | | Reject |
| | | | |
| **nployment Agreements** | | | |
| Pat Brant Employment Agreement - Dated 5/16/2007 | | | Reject |
| Bruce Dunlop Employment Agreement - Dated 7/28/2006 | | | Reject |
| Douglas Whitworth Employment Agreement - Dated 6/15/2006 | | | Reject |
| | | | |
| **oftware Licenses** | | | |
| Microsoft Dynamics GP Accounting Software     5 user license | | | Assume |
| IssueTrac Management Software | | | Assume |
| Cisco Software Licenses Included as part of the various equipment that we own | | | Assume |
| iDirect software and license s included with the iDirect hubs, routers and modems | | | Assume |
| Various software to operate the numerous PC's owned by SkyPort including Microsoft XP, Vista, Office, Adobe writer, ect | | | Assume |
| Software Licenses included with the Johnson Controls facilities monitoring systems | | | Assume |
| KUband Uplink Power control system | | | Assume |
| Norton Symantec - Antivirus - 50 llc | | | Assume |
| Power Equalization System Mgt Software | | | Assume |
| Link Budget Software Tools | | | Assume |
| Inginix - Work Order Mgt System | | | Assume |
| GSS Software license | | | Assume |

* The Debtor is assuming two separate agreements with Alpheus Data and Alpheus Communications pursuant to Motion to Compromise
ntroversy with Alpheus that was filed in the Debtor's bankruptcy case on June 12,2009 (Docket # 237) and includes the following
reements (a) Wholesale Master Services Agreement, dated as of August 14, 2007 (as may have been amended ,supplemented
d/or modified) by and between SkyPort and Alpheus Data, and (b) the Wholesale Master Service Agreement, dated as of March 24, 2003
s may have been amended, supplemented and/or modified) by and between SkyPort and Alpheus Communications

Case 08-36737  Document 349  Filed in TXSB on 08/12/09  Page 40 of 45
Case 08-36737  Document 289  Filed in TXSB on 07/30/09  Page 1 of 6
Case 08-36737  Document 337  Filed in TXSB on 08/11/09  Page 40 of 45

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **SKYPORT GLOBAL** | § | **CASE NO.  08-36737-H4-11** |
| **COMMUNICATIONS, INC.,** | § | |
| | § | |
| **DEBTOR** | § | **Chapter 11** |

### MODIFICATIONS TO CHAPTER 11 PLAN OF REORGANIZATION FILED BY DEBTOR, SKYPORT GLOBAL COMMUNICATIONS, INC. (DOC. 223)

Pursuant to Section 1127 of the Bankruptcy Code, the Debtor, Skyport Global

Communications, Inc., hereby submits the following Modifications to the Chapter 11

Plan of Reorganization filed on May 22, 2009 (Doc. 223).

### Modifications to Article 3

Section 3.4 shall be modified by inserting the phrase "in full" on the second line

after the word "paid" and by adding the following to the end of the section:

The only Allowed Priority Tax Claim is held by the Texas Comptroller of Public Accounts in the amount of $116,446. The quarterly payment is changed to $10,387. The balance of the Claim held by Texas Comptroller of Public Accounts in the amount of $9,989 shall constitute a General Unsecured Claim and paid in accordance with Section 4.4 of the Plan. Further, the Texas Comptroller of Public Accounts is exempted from Sec. 13.6. Finally, a failure by the Reorganized Debtor to make payment to priority tax creditors pursuant to the terms of the Plan shall be an Event of Default. If the reorganized debtors fail to cure an Event of Default as to tax payments within ten (10) days after service of a written notice of default from a priority tax creditor, then a priority tax creditor may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies under applicable nonbankruptcy law, and ( c) seek such relief as may be appropriate in this court.

### Modifications to Article 4

Section 4.2.1 through 4.2.5 shall be deleted in their entirety and replaced with the

following:

**EXHIBIT**

B

Case 08-36737 Document 340 Filed in TXSB on 08/12/09 Page 41 of 45
Case 08-36737 Document 289 Filed in TXSB on 07/30/09 Page 2 of 6
Case 08-36737 Document 337 Filed in TXSB on 08/11/09 Page 41 of 45

4.2.1  <u>Classification of CenturyTel Claim</u>.  Class 2A consists of the Secured Claim of CenturyTel, which holds a total claim of $2.7 million. CenturyTel shall be granted an Allowed Secured Claim in the amount of $1.5 million.

4.2.2  <u>Treatment</u>.  The CenturyTel Allowed Secured Claim shall bear interest at the rate of 6% per annum and shall be paid with equal monthly payments based on a fifteen year amortization commencing December 31, 2009. The entire principal balance shall be due and payable on December 31, 2014.  The Reorganized Debtor may prepay this Claim without prepayment penalty.  CenturyTel shall retain its liens and security interests; however, the CenturyTel Allowed Secured Claim shall be secured by a lien solely on the Reorganized Debtor's interests in real estate, the City of Houston ground lease, any buildings and improvements thereon and fixtures therein, as well as the generator and related electrical equipment described in the attached Exhibit A.  Said liens shall be first and priming liens on said property in preference and priority to any and all other claims and interests. The Reorganized Debtor agrees to provide CenturyTel with confirmation of the payment of rent on the ground lease with the City of Houston.  The failure to timely pay a rental payment in accordance with the ground lease shall be a default of the obligations created hereunder.  The balance of the CenturyTel Claim in the amount of $1.2 million shall constitute a General Unsecured Claim and paid in accordance with Section 4.4 of the Plan.

4.2.3  <u>Classification of Aegis Claim</u>.  Class 2B consists of the Secured Claim of Aegis which holds a total claim in the amount of $2.5 million. Aegis shall be granted an Allowed Secured Claim in the amount of $800,000.

4.2.4  <u>Treatment</u>.  The Aegis Allowed Secured Claim shall bear interest at the rate of 6% per annum and shall be paid with equal monthly payments based on a four year amortization commencing December 31, 2009. The entire principal balance shall be due and payable on December 31, 2012. The Reorganized Debtor may prepay this Claim without prepayment penalty.  Aegis shall retain its pre and postpetition liens; however, the Aegis Allowed Secured Claim shall be solely secured by a lien on all existing and future general intangibles, intellectual property, equipment, inventory, investment property, contracts, personal property FCC licenses and proceeds from each, except accounts receivable and customer contracts, and the generator and related electrical equipment described in the attached Exhibit A.  Said liens shall be first and priming liens on said property in preference and priority to any and all other claims and interests. For a period of 12 months from December 31, 2009, Aegis shall have the right to convert $100,000 of its Allowed Secured Claim to a 5% equity interest in the Reorganized Debtor.  The balance of the Aegis Claim

in the amount of $1.7 million shall constitute a General Unsecured Claim and paid in accordance with Section 4.4 of the Plan.

## Modifications to Article 9

Article 9 shall be modified by adding the following new sections 9.5 and 9.6.

9.5       The Debtor entered into a settlement with Alpheus Communications, L.P. and Alpheus Data Services, LLC agreeing, among other things, to assume two pre-petition executory contracts as modified, agreeing to a reduced cure amount, and waiving preference claims (Doc. 237). This settlement was approved by the Court pursuant to its Order Approving Compromise and Settlement dated July 7, 2009 (Doc. 259). This settlement is hereby incorporated and made part of the Plan. To the extent that anything contained in this Plan conflicts with the settlement agreement, the terms of the settlement agreement shall control. Likewise, notwithstanding anything to the contrary contained in this Plan, Alpheus' cure claim shall be paid in accordance with the settlement agreement, and Alpheus shall not be required to file any application for payment of any administrative claims relating to the assumption of Alpheus' contracts and its cure claim related thereto.

9.6       On February 26, 2009, the Court entered its Order Authorization Rejection of Non-Exclusive Service Agreement with Intelsat (Doc. 120). Notwithstanding that order, disputes remained between Intelsat and the Debtor over potential pre-petition preferential payments and the Debtor's refusal to pay for post-petition services. The Debtor and Intelsat have resolved this dispute by agreeing to: (i) grant Intelsat a $25,000 Administrative Claim payable in accordance with Section 3.2 of the Plan; (ii) grant Intelsat a $1 million General Unsecured Claim payable in accordance with Section 4.4 of the Plan; and (iii) waive all claims existing between the Debtor and Intelsat (or any of their affiliates, including Intelsat LLC, Intelsat, Ltd. and Balaton Group) and their respective agents, attorneys, officers and directors. This settlement was approved by the Court pursuant to its Agreed Order to Estimate Intelsat Claim dated July 24, 2009 (Doc. 285). This settlement is hereby incorporated and made part of the Plan.

## Modification to Article 12

Section 12.1 shall be modified by deleting the word "exclusive" on the second line.

## Modifications to Article 13

Section 13.7 shall be modified by adding a new section 13.7.4 as follows

13.7.4 Subject to confirmation of the Plan, Aegis, CenturyTel, Balaton and Robert Kubbernus on behalf of themselves, their agents, officer, directors, employees, legal representatives, attorneys, predecessors, successors, and assigns and all persons, natural or corporate, in privity with them, expressly RELEASE, ACQUIT and FOREVER DISCHARGE each other from any and all Claims, demands, responsibilities, obligations, liabilities and causes of action of whatsoever nature, statutory or otherwise, in contract or in tort, whether known or unknown, fixed or contingent; it being the intent of the parties hereto to fully and completely release all claims and settle all disputes and controversies, whether heretofore asserted or not. This mutual release has been consensually agreed to by the named parties.

DATED:     July 30, 2009

SKYPORT GLOBAL COMMUNICATIONS, INC

By: /s/Robert Kubbernus
    Robert Kubbernus, CEO

OF COUNSEL:

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
Edward L. Rothberg
State Bar No. 17313990
Hugh M. Ray, III
State Bar No. 24004246
Eleven Greenway Plaza, Suite 1400
Houston, TX  77046
Telephone:  713.961.9045
Facsimile:  713.961.5341

ATTORNEYS FOR SKYPORT GLOBAL COMMUNICATIONS, INC.

Exhibit A

POWER ROOM EQUIPMENT, INCLUDING BUT NOT LIMITED TO ASSORTED BATTERIES, (2) UPS MAINTENANCEBYPASS PANELBOARD CONTROL PANELS W/ SQUARE D CIRCUIT BREAKERS, ASSORTED OTHER SQUARE DCONTROL PANELS, (2) LIEBERT 150KVA UNINTERRUPTIBLE POWER MODULES, (2) LIEBERT 360A UNINTERRUPTIBLEPOWER SYSTEMS, (2) LIEBERT COOLING UNITS, (2) DISTRIBUTION 1600XL UNITS, ASSORTED RECTIFIERS, ETC.

GENERATOR, CATERPILLAR, S/N CAT00000K9EP02559, INCLUDES CATERPILLAR GEN SET3412, MFG. 2003, 750 KVA,600KW, GENERATOR MOUNTED ONTO 2,000 GALLON WELDED CARBON STEEL DIESEL FUEL TANK, ALSO INCLUDESSIMPLEX LOAD BANK MOUNTED ONTO END OF GENERATOR SYSTEM AND CONTROLS LOCATED INSIDE BUILDING [B]

AIR CONDITIONING UNITS, LIEBERT, (3) TOTAL EACH W/ LED READOUT, ALSO INCLUDES LIEBERT PRECISIONPOWER NETWORK POWER SUPPLY, EMERSON NETWORK POWER HELIOS DISTRIBUTION BAY INCLUDING METERASSEMBLY AND OTHER DISTRIBUTION PANELS, ETC.,

IRE ALARM SYSTEM, JOHNSON CONTROLS INCLUDES IFC 200 CONTROL, ETC.,